GEORGE COOPER *vs.* GEORGE FINKE and others.

December 16, 1887.

**Principal and Agent — Power of Attorney.**—A power of attorney "to grant, bargain, sell, and convey any and all personal or real property," gives authority to sell and convey, by assignment of the certificate of sale, the interest or estate which a purchaser at a mortgage sale has in the premises prior to the expiration of the period of redemption.

**Parol Evidence — Impeachment of Sheriff's Certificate of Redemption.**—In an action to set aside a certificate of redemption executed by a sheriff, its recitals may be impeached by parol evidence, showing that no redemption was in fact made, and no money paid to the sheriff.

Same—Deed Procured by Fraud.—So, in an action to set aside a deed on the ground that it was obtained by fraud, parol evidence of the fraud is admissible to impeach the deed.

The plaintiff brought this action in the district court for Nobles county, alleging in his complaint, in substance, the following facts: In 1880 the defendant Halverson, who was the owner of a quarter-section of land, mortgaged it to the defendant, the Edinburgh American Land Mortgage Company, to secure the payment of the sum of $400, with interest at the rate of nine and one-half per cent. per annum. Default having been made in the payment of this mortgage, it was foreclosed by advertisement, the sale being made on August 2, 1884, to the Mortgage Company for $558.39. On January 27, 1885, the Mortgage Company duly sold and assigned the sheriff's certificate of sale to the plaintiff, and such assignment was duly recorded. No redemption was made from such sale, and the plaintiff ever since August 2, 1885, has been the owner of the quarter-section. In 1882 defendant Halverson conveyed the south half of the quarter-section of land to the defendant Andrew Lund, who in 1883 conveyed the same to Edward Cooper. On December 1, 1884, Halverson conveyed the north half of the quarter-section to the defendant Lewis S. Nelson, who on April 2, 1885, conveyed the same to the defendant George Finke, and took from said Finke a purchase-money mortgage thereon for the sum of $300. On May 13, 1885, the defendant Miller, as sheriff of Nobles county, made and delivered to the defendant Nelson a sheriff's certificate of redemption of the quarter-section from the mortgage foreclosure sale above mentioned, which certificate was in the form required by law, and set forth among other things that Nelson had, on May 13, 1885, paid to Miller, as sheriff, the sum of $593.75, being the amount required to redeem, and that Nelson had fully and legally redeemed the quarter-section. This certificate was under seal, witnessed, duly acknowledged, and recorded in the office of the register of deeds of Nobles county. It is alleged that at the time of the alleged redemption the amount necessary to redeem was $599.80, that no money was paid at any time to the defendant Miller to redeem from the mortgage foreclosure sale, and that the certificate is untrue. Plaintiff has never received or been tendered any sum

whatever for the redemption of the premises. Upon these allegations, the plaintiff demanded judgment that the certificate of redemption and the mortgage from Finke to Nelson be adjudged null and void and be cancelled; that the Mortgage Company be required to disclose its claim if any; and that the defendants be barred and foreclosed of any right, title, lien, or interest in the premises.

The defendants Finke, Nelson, and Miller answered, denying that the Mortgage Company ever assigned the sheriff's certificate of sale to the plaintiff, alleging that on March 30, 1885, such certificate of sale was sold by the Mortgage Company to the defendant Nelson for the sum of $633.75, and an assignment duly made out and executed in blank; and that thereafter one J. C. Easton fraudulently wrote the name of the plaintiff in such assignment, instead of the name of the defendant Nelson. The answer also contains a general denial, and for a further defence, alleges that on August 17, 1885, the plaintiff conveyed the premises to the defendant Nelson. The reply to this answer alleges that the deed from the plaintiff to Nelson, set up in the answer, was obtained through fraud and false representations, and asks that the same be cancelled and adjudged null and void. The action was tried by *Perkins*, J., who, upon the facts as found by him, (which are recited in the opinion,) directed judgment for the plaintiff, adjudging that he is the owner of the premises, that the deed from the plaintiff to the defendant Nelson and the certificate of redemption made by the defendant Miller are void, and that the defendants have no right, title, interest, or lien to or on the premises. It appears from the evidence that the assignment of the sheriff's certificate of sale from the Mortgage Company to the plaintiff was made by one John Paton as attorney in fact. Defendants Finke and Nelson appeal from the judgment.

*Geo. W. Wilson*, for appellants.

*Daniel Rohrer*, for respondent.

MITCHELL, J. The record chain of title to the land in controversy, as far as here material, is as follows: Halverson, the owner of the whole quarter-section, executed to the Edinburgh American Land Mortgage Company a mortgage for $400, and a second mortgage to plaintiff for $65, and subject to these two mortgages subsequently

conveyed one 80 to the defendant Edward Cooper, and the other 80 to defendant Nelson, who conveyed to the defendant Finke, taking back a purchase-money mortgage. Default having been made in the first mortgage, the Edinburgh Company foreclosed, and on August 2, 1884, bid in the premises. In April, 1885, this company, by one Paton as its attorney in fact, assigned the certificate of sale to plaintiff. On May 13, 1885, defendant Miller, as sheriff, executed to defendant Nelson a certificate of redemption from the mortgage sale. On May 26, 1885, Nelson paid to plaintiff the second or $65 mortgage, receiving from him a written release or satisfaction. This last fact is, however, unimportant, except as explaining a subsequent transaction. In September, 1885, plaintiff executed to Nelson a quitclaim deed of the premises. The contest is really between plaintiff and Nelson, as Finke, the only other appellant, must stand or fall with the title of his grantor, Nelson.

Plaintiff's pleadings are somewhat irregular, part of the relief which he asks being set up in the reply, which ought properly to have been set up in a supplemental complaint. But as no objection on that ground was made, either here or in the court below, we shall consider the action, as it has been by both parties, as one brought by plaintiff claiming title under his assignment of the certificate of mortgage sale, to set aside as clouds on his title the certificate of redemption executed by the sheriff, and the quitclaim deed executed by the plaintiff, to the defendant Nelson,—the former on the ground that it is false, and was executed without any redemption having in fact been made, and the latter on the ground that it was obtained by fraud.

1. Of Paton's authority under his power of attorney from the Edinburgh Company to execute this assignment, there can be no question. It authorizes him "to grant, bargain, sell, and convey  *  *  * any and all *personal or real property,* now or hereafter owned or held by the said Edinburgh, etc., Company, and in their name to make, execute, acknowledge, and deliver good and sufficient deeds and conveyances for any real estate so sold, either with or without covenants of warranty." Under this it is unimportant whether the interest of the company in the land under the certificate of sale was real or personal property. The power to sell is ample in either view. It was,

however, an interest or estate in the land capable of being conveyed by deed. *James* v. *Wilder*, 25 Minn. 305; *Lindley* v. *Crombie*, 31 Minn. 232, (17 N. W. Rep. 372.)

2. We turn now to the certificate of redemption issued by the sheriff to Nelson. The history of the matter is briefly this: Both plaintiff and Nelson (plaintiff first, and Nelson afterwards) had applied to J. C. Easton, the agent of the Edinburgh Company for certain purposes, to procure an assignment of the certificate of sale on the mortgage foreclosure. On the 30th of March, 1885, an arrangement seems to have been made between Nelson and Easton, by which the latter was to procure for the former such an assignment, if Cooper (who had applied first) did not take it, for a bonus of $40 over and above the amount then necessary to redeem, which was $593.75. Nelson paid these two sums to Easton, who gave him two receipts, —one acknowledging the receipt of $40, for furnishing an assignment of the certificate, and the other for $593.75, for the redemption of the land from the mortgage sale; the understanding being that if Easton procured Nelson the assignment, he was to retain both sums for the purpose; but, if he did not obtain it, he was to return the $40, and Nelson might get a certificate of redemption from the sheriff, on presentation of the receipt for $593.75. Easton never in fact obtained for Nelson any assignment, one having been given, as already stated, to plaintiff. Easton then returned to Nelson the whole of the money, $613.75, by express, which he accepted, and took from the express office on the 13th of May, 1885, and appropriated to his own use. On the same day, on presentation of Easton's receipt of March 30th for the $593.75, he induced the sheriff to execute and deliver to him the certificate of redemption in question, certifying that he had redeemed by paying $593.75; but in fact he had not and did not pay a cent.

Considerable was said, both in the court below and here, as to the effect of these transactions with Easton, and as to the extent of Easton's authority as agent for the Edinburgh Company. The questions are wholly immaterial and unimportant, for the reason that whatever was done with Easton was undone by Nelson's accepting and taking back his money. It is wholly unimportant that he de-

ferred (evidently purposely) taking the money out of the express office until after he procured the certificate of redemption from the sheriff. He is estopped from claiming anything whatever from what occurred with Easton. He must stand or fall on what took place between himself and the sheriff. That the certificate of redemption issued to him by the sheriff is false and void needs no argument. The sheriff had no authority whatever to issue it. No redemption whatever was in fact made. In contending that, in an action to set aside the certificate for this reason, its recitals cannot be contradicted by parol evidence, the appellant has certainly forgotten a very elementary rule of evidence. Parol evidence is always admissible in such cases to show that an instrument is altogether void, or that it never had any legal existence or binding force. The rule which allows a party to impeach a written instrument as illegal and void is as old as the other general rule which disallows parol evidence to contradict or vary a written instrument, and both are alike conducive to the ends of justice,—the one for giving security and effect to valid instruments, and the other for annulling and putting an end to those that are illegal and ought never to have existed. If this power of impeaching such instruments by means of extrinsic evidence did not exist, the other rule would be a mere shelter for fraud. 1 Greenl. Ev. § 284; 2 Phil. Ev. 682.

3. After Nelson discovered that plaintiff had procured from the Edinburgh Company an assignment of the certificate of sale, he prepared a quitclaim deed, and sent it to one S. E. Hagadorn, in Yates, New York, where plaintiff lived, with instructions, written in pencil upon the deed, to the effect that the release of the mortgage (the $65 one) which plaintiff had previously executed was not sufficient under the laws of this state, and that it required a quitclaim deed to discharge the mortgage of record; and asking him to have plaintiff execute it, and then return it. In the absence of S. E. Hagadorn, his son received the letter, and took the deed to plaintiff, and communicated to him these instructions or statements as to the alleged purpose for which the deed was desired. Cooper, who was an illiterate old man, who could neither read nor write, not knowing the contents or legal effect of the instrument, believing these statements to be true,

and supposing it to be a mere release of the mortgage to correct the one previously given, executed the deed without receiving any consideration whatever.    Hagadorn then returned it to Nelson, who, after erasing the pencilled instructions, placed it on record.

That such a state of facts justified the court in finding that this deed was obtained by fraud is too plain to merit discussion.    The deed could be impeached by parol evidence of all these facts, for the same reason already suggested in regard to the impeachment of the certificate of redemption.    It is unimportant that these false and fraudulent representations were communicated by Hagadorn the younger, instead of Hagadorn the elder, to whom Nelson sent them. They were sent for the purpose of being communicated to plaintiff, in order to get him to sign the deed; they were so communicated, and through them Nelson procured the deed.    The point that parol evidence was inadmissible to prove what instructions Nelson sent is without force, in view of the fact that the written originals were erased from the deed on its return.

What has been said covers all that there is in defendants' 25 assignments of error that is entitled to any special consideration. There was no error in the rulings of the court during the trial.    The findings of fact are abundantly supported by.the evidence, and the conclusions of law warranted by the findings of fact.

Judgment affirmed.