Condit v. Dady.

---

## James M. Condit v. Robert Dady.

56  545
163s 513
56  545
s104  508
56  545
s209s 488

1. CONTRACTS—*What Will Justify a Court in Rescinding.*—To justify a court in rescinding a contract executed by two parties upon the ground that it was procured by fraud, the testimony must be of the strongest and most cogent character, and the case a clear one.

2. DELIVERY—*Placing an Instrument in the Hands of a Third Party.*—Upon the subject of the delivery of a written contract or deed, the authorities are abundant that whatever physical disposition of the instrument may have been made, the fundamental inquiry is whether the minds of the parties agreed in regarding the instrument as taking effect immediately. If placed in the hands of a third person with such understanding and without condition or reserve, the law makes it a sufficient delivery.

3. SAME—*When a Contract Takes Effect from its Execution.*—When a paper shows upon its face that it is intended to take effect and operate from its execution, and is delivered to a third person, the presumption is that it was for safe keeping and not merely as an escrow or to take effect at a subsequent delivery.

Memorandum.—Injunction to restrain the prosecution of a suit at law. In the Circuit Court of Lake County; the Hon. CLARK W. UPTON, Judge,

presiding. Decree for complainant; appeal by defendant. Heard in
this court at the May term, 1894. Reversed and remanded with direc-
tions. Opinion filed December 13, 1894.

HOYNE, FOLLANSBEE & O'CONNOR, attorneys for appellant.

JOSEPH WRIGHT and HOMER COOKE, attorneys for appellee;
COOKE & UPTON, of counsel.

MR. JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

Appellant instituted a suit in the Circuit Court of Lake
County against appellee to recover damages for breach of
an alleged contract wherein appellee agreed to sell and con-
vey to appellant 160 acres of land.

After the filing of the declaration appellee presented a
bill in equity to enjoin the prosecution of the suit and have
the contract declared void.

A temporary injunction restraining a prosecution of the
suit at law was granted, and upon a hearing the Circuit
Court rendered a decree making the injunction perpetual
and setting aside the contract as null and void.

The evidence in the case is very voluminous. Much of
it is utterly irreconcilable. We have examined it carefully
and out of the great volume and many conflicts find the
facts to be as follows:

In December, 1890, appellant began negotiations with
appellee, an extensive farmer and land owner near Wauke-
gan, Ill., for the 160 acres of land in question.

There were at the time rumors that a large manufactur-
ing concern, The Washburn and Moen Mfg. Co., contem-
plated the removal of its plant to Waukegan. The effect
of these rumors was to excite matters pertaining to real
estate, as the location of the plant would enhance the value
of lands in the vicinity. Both parties were fully advised of
these rumors. Several interviews were had between them,
but no definite agreement was reached, appellant not being
willing to pay the fifty dollars per acre asked by appellee.
On the 14th of January, 1891, however, appellant having
concluded to purchase, sought appellee at his house, and

learning there that he had gone to Milwaukee went to that place; finding appellee there, negotiations were renewed which resulted in the execution of the following contract:

In consideration of the sum of one dollar, the receipt of which is hereby acknowledged, to me in hand paid by James M. Condit, I, Robert Dady, agree to sell to James M. Condit, his heirs or assigns, 160 acres of land, located in section 32, Lake Co., Illinois, being the northwest quarter-section, known as the Jack Dugdale farm, at the sum of $50 per acre, on the following terms: $500 cash when I furnish an abstract showing a good and sufficient title; $3,000 on or before August 1, 1891; one-fourth of the balance on or before August 1, 1894; one-fourth on or before August 1, 1897; one-fourth on or before August 1, 1900; one-fourth on or before August 1, 1903, with interest on deferred payments at six per cent per annum, payable semi-annually. Upon payment of the $3,000 on or before August 1, 1891, I agree to give a warranty deed to the above described property, taking a mortgage on same for deferred payment. But in case of failure on the part of J. M. Condit to make said payment of $3,000 I agree to accept $500 additional as liquidation of all damages to myself.

In consideration of which I, James M. Condit, agree to purchase the above described property on the terms above mentioned. And in case of failure to make payment of $3,000 on or before August 1, 1891, I agree to pay to Robert Dady, his heirs or assigns, $500 additional, in liquidation of damages.

R. DADY,<br>JAMES M. CONDIT.

Milwaukee, January 14, '91.

Appellee is an illiterate man and is unable to write except to sign his name. The contract was written by appellant but, as we believe, was correctly read over to appellee before signing, and was fully understood by him.

After it was signed it was, by agreement of the parties, put in a sealed envelope and mailed to Charles Whiting, an attorney at Waukegan, with the following instruction in-

dorsed on the outside of the envelope: "Not to be opened until R. Dady and J. M. Condit call. Put in your safe."

At the same time appellee dictated a letter which appellant wrote to appellee's daughter apprising her that he had sold the land for $150 per acre, and directing her to take the abstract of title which he held to a Mr. Jones, an abstract maker, have it brought down to date and, when finished, deliver to appellant or Messrs. Whiting & Upton.

Appellee then departed on the business engaging him, buying stock, to Mauston, Wis., and appellant returned to Waukegan. On his arrival at Muston, appellee received a letter from his daughter, stating she had heard that several farmers in the neighborhood had sold their farms for $300 per acre and that the manufacturing plant was to be located at Waukegan. Appellee immediately returned and had his wife, who had taken the abstract to Jones to be carried down to date, procure its return.

A few days after the abstract was returned to Mrs. Dady appellant called at Jones' office to learn if the abstract was ready for him, and, learning that Mrs. Dady had taken it away, ordered a new one for himself. Finding the title satisfactory, he wrote appellee that he was ready to carry out the agreement and requested a meeting at Whiting & Upton's office for that purpose. Receiving no reply, he in a few days went to appellee's farm and made him a tender of the $500 cash payment, which was refused. On the 30th of July, 1891, he made a tender of $3,500, with notes and mortgage to secure deferred payments, drawn in accordance with the contract and demanded an execution of a deed.

Appellee refused the tender, refused to execute a deed, accused appellant of cheating him, and declined to have any thing further to do with the matter.

A suit for breach of the contract followed, and pending the same, about two years afterward, this suit to enjoin it was commenced.

Two grounds are set up in the bill on which complainant bases his right to relief: First, that the contract was ob-

tained by fraud; second, that the contract was never delivered.

It is claimed that appellant fraudulently obtained the contract by withholding information that the Washburn & Moen Mfg. Co. had decided to locate at Waukegan when he was in good conscience bound to communicate it, by false representations in that matter, made in the interview at Milwaukee, and by drawing a different contract from the one agreed upon and misreading it.

At the time the contract was made appellee knew the location of the manufacturing plant at Waukegan had been talked of for months. He knew the effect which the location would have on the value of his lands.

Even if appellant possessed the information which the bill charges he had, it is doubtful whether appellee is in a position to ask the contract to be annulled because appellant failed to communicate such information. But we fail to discover any evidence in the case showing that appellant possessed the information.

He expressly denies that he had any further information than the rumors which were in circulation and known by the public generally. Indeed, the first reliable and certain information upon the subject came when a mortgage was sent to Waukegan for record on the 16th day of January, 1891, two days after the signing of the contract at Milwaukee.

In support of the charge that appellant made false misrepresentations as to the coming of the manufacturing company the testimony of appellee alone appears in the record. It is confused and inconsistent and is met by explicit denial of appellant.

To justify a court in rescinding a contract executed by two parties, upon the ground that it was procured by fraud, the testimony must be of the strongest and most cogent character, and the case a clear one. Walker v. Hough, 59 Ill. 375. While the bill makes no charge of misreading the contract the testimony of appellee upon that matter was doubtless admissible as tending to characterize the conduct

of appellee at the time the contract was made and to aid in
ascertaining the intention of the parties upon the subject of
a delivery. Upon this point his testimony is so confused
and contradictory as to render it untrustworthy and in view
of the explicit testimony of appellant that the contract con-
tained the exact terms which had been agreed upon and was
correctly read over to appellee we are clearly of the opinion
that such claim is not true.

Was there a delivery of the contract?

It is urged by counsel for appellee that from the written
instructions upon the outside of the envelope addressed to
Whiting alone, must be determined the intention of the
parties as to delivery.

In support of this contention they invoke the aid of the
familiar rule that all previous and contemporaneous verbal
negotiations are merged in the writing executed by the par-
ties. The arrangement as to what should be done with
regard to the delivery, or rather non-delivery of the contract
having been reduced to writing, no room is left for contro-
versy on that point, it is urged, since if there had been any
previous verbal understanding it would have been merged
in the written instructions.

They contend, therefore, that the oral testimony as to
what was previously said or done with reference to what
disposition should be made of the contract, and what should
be done toward carrying it out, becomes unimportant except
in so far as it discloses the reason why appellee took the
precaution he did to retain control over the contract. The
answer to this contention is that the written instruction to
Whiting, "Not to be opened until R. Dady and J. M. Con-
dit call. Put in your safe," does not disclose the intention
of the parties as to when the contract was to take effect.
It amounted to nothing more than a mere direction to Whit-
ing what to do with the envelope and its contents. Whether
delivered to him in escrow or for safe keeping, or for what
purpose, the written instruction did not disclose.

Certainly this is a case in which the surrounding circum-
stances as disclosed by parol proof must discover the inten-
tion of the parties. Evidence of what was said and done

during the entire interview at Milwaukee was proper for that purpose. We do not understand that a manual delivery of the contract to appellant was necessary. As it imposed upon each party certain acts of performance, the safer mode and perhaps the most usual one would have been to execute the contract in duplicate and each party retain one. As appellee was pressed for time in taking his train for Mauston such a course was impracticable, however, and it was only natural that the contract should be placed in the hands of a third party for safe keeping. Such party, when agreed upon, became no more the agent of one party than the other.

Upon the subject of the delivery of a written contract or deed, the authorities are abundant that whatever physical disposition of the instrument may have been made, the fundamental inquiry is whether the minds of the parties were agreed in regarding the instrument as taking effect immediately. If placed in the hands of a third party with such understanding and without condition or reserve, the law makes it a sufficient delivery. Gunwell v. Cockerill, 79 Ill. 79; Walker v. Walker, 42 Ill. 311; Bogie v. Bogie, 35 Wis. 659; McCullough v. Day, 45 Mich. 554; Buckman v. Buckman, 32 N. J. Eq. 259.

The plain purport of the language of the instrument is that the contract was to take effect immediately. A careful consideration of the evidence and the conduct of appellee satisfies us that he so understood it.

When a paper shows upon its face that it is intended to take effect and operate from its execution, it would be very difficult to maintain the delivery to a third person was merely an escrow, or not to take effect until a subsequent delivery. Hosley v. Holmes, 27 Mich. 416.

We are of the opinion that the Circuit Court erred in annulling the contract and perpetually enjoining the suit at law.

The decree is therefore reversed, with directions to the Circuit Court to dissolve temporary injunction and dismiss the bill.

Reversed and remanded with directions.

LACEY, P. J., DISSENTS.

I dissent. The main question of dispute between appellant and appellee was as to the delivery of the contract. The appellee testified that the contract was not to be delivered until he had a chance to ascertain whether the Washburn & Moen Company had located its shops at Waukegan, and whether there had been any rise in real estate, and he is corroborated by the directions on the envelope. Appellee was away from home at the time. Appellant on the contrary testified that such was not the case and that the delivery was absolute. I think the evidence fairly established appellee's contention, or at least he so understood the arrangement. The minds of both parties did not meet, and therefore the contract of sale was not made complete by delivery.