ROBERT DADY

*v.*

JAMES M. CONDIT.

*Filed at Ottawa November 9, 1896.*

1. FRAUD—*false representations not acted upon do not constitute fraud.* Representations by a purchaser of land that a manufacturing company has not decided to locate in the vicinity will not constitute fraud relieving the vendor from his agreement, where he did not believe the statements to the extent of acting upon them.

2. CONTRACTS—*formal delivery of contract not essential to validity.* The formal delivery of a mutual agreement for the sale of land is not essential to its binding effect upon the parties, and the placing of it in a sealed envelope in the custody of a third person, with an indorsement that it is not to be opened until the parties call,— "Put it in your safe,"—is not inconsistent with its binding effect.

BAKER, J., dissenting.

*Condit* v. *Dady*, 56 Ill. App. 545, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Lake county; the Hon. CLARK W. UPTON, Judge, presiding.

CHARLES F. BEACH, Jr., and S. P. SHOPE, for appellant:

To constitute a delivery there must be such an act or acts of delivery as show an intention to surrender the instrument to the other party, or to some third person for his use, otherwise there is no delivery and the instrument has no validity. Devlin on Deeds, sec. 260.

Delivery is complete only when the contracting party has parted with his dominion over the contract. *Byars*

v. *Spencer*, 101 Ill. 429 ; *Provart* v. *Harris*, 150 id. 40 ; *Warren* v. *Sweet*, 31 N. H. 332.

Delivery, moreover, is a question of intent. The main thing is whether the contracting party indicated his will that the instrument should pass from his control and into the possession and control of the other party. Devlin on Deeds, secs. 262, 269 ; cases *supra*.

Both parties cannot, consistently with its objects, have control of the deed at the same time, and until the grantor parts with all control over it that of the grantee does not attach. *Provart* v. *Harris*, 150 Ill. 40, and cases cited; *Bryan* v. *Wash*, 2 Gilm. 557; *Walker* v. *Walker*, 42 Ill. 311; *Skinner* v. *Baker*, 79. id. 496.

To make the delivery effectual the power of dominion over the deed must be parted with. Until then the instrument passes nothing. *Cook* v. *Brown*, 34 N. H. 460.

HOYNE, FOLLANSBEE & O'CONNOR, for appellee :

Where parties intend an instrument to become immediately operative, it takes effect at once, whether any physical delivery of the instrument is made or not. *Doe* v. *Knight*, 5 B. & C. 671; *Bogie* v. *Bogie*, 35 Wis. 659 ; *Byer* v. *McClanahan*, 6 G. & J. 250; *Scrugham* v. *Wood*, 15 Wend. 545; *McCullough* v. *Day*, 45 Mich. 554; *Xenos* v. *Wickham*, 2 L. R. Eng. & Ir. App. 296 ; *Ruckman* v. *Ruckman*, 32 N. J. Eq. 259 ; *Walker* v. *Walker*, 42 Ill. 311; *Gunnell* v. *Cockerell*, 79 id. 79.

Mr. JUSTICE WILKIN delivered the opinion of the court:

On the 14th of January, 1891, the parties to this litigation entered into the following contract:

"In consideration of the sum of one dollar, the receipt of which is hereby acknowledged, to me in hand paid by James M. Condit, I, Robert Dady, agree to sell to James M. Condit, his heirs or assigns, 160 acres of land located in section 32, Lake county, Illinois, being the north-west quarter section, known as the Jack Dugdale farm, at the sum of $150 per acre, on the following terms: $500 cash when I furnish an abstract showing a good and sufficient title, $3000 on or before August 1, 1891, one-fourth of the balance on or before August 1, 1894, one-

fourth on or before August 1, 1897. one-fourth on or before August 1, 1900, one-fourth on or before August 1, 1903, with interest on deferred payments at six per cent per annum, payable semi-annually.   Upon payment of the $3000 on or before August 1, 1891, I agree to give a warranty deed to the above described property, taking a mortgage on same for deferred payments.   But in case of failure on the part of J. M. Condit to make said payment of $3000 I agree to accept $500 additional as liquidation of all damages to myself.

"In consideration of which, I, James M. Condit, agree to purchase the above described property on the terms above mentioned, and in case of failure to make payment of $3000 on or before August 1, 1891, I agree to pay to Robert Dady, his heirs or assigns, $500 additional in liquidation of damages.

MILWAUKEE, *January 14, 1891.*        R. DADY,
                                    JAMES M. CONDIT."

Subsequently Dady refused to perform the agreement and Condit brought his action for damages.   Thereupon Dady filed this bill to enjoin the action at law and to set aside the alleged agreement for fraud and because it was never delivered.   The circuit court found in favor of the complainant and decreed accordingly.   The Appellate Court for the Second District reversed that decree without remanding the cause, and appellant, Dady, prosecutes this appeal.

On the former submission of the cause we affirmed the judgment of the Appellate Court, adopting its opinion, which is reported in 56 Ill. App. 545.   Subsequently a rehearing was granted on the petition of appellant, and the cause again taken under advisement.   Appellee having replied to the petition for rehearing, we have re-examined the evidence in the light of arguments and reach the same conclusion announced in our former opinion.   We still concur in the reasoning and conclusion announced in the opinion of HARKER, J., above referred to, but in order to avoid repetition will briefly state, in our own language, those views.

The relief prayed in the bill is based upon two theories therein alleged:   First, that the agreement was procured

163—33

through fraud on the part of Condit, by making false representations and concealing certain facts; and second, that the contract was never consummated by delivery thereof. It appears from the evidence that prior to and at the time of the execution of this agreement there was a rumor in Waukegan and vicinity that the Washburn & Moen Manufacturing Company might locate its plant at that place, and the result of that rumor was to produce activity in the sale of, or rather in the obtaining of options upon, real estate in that locality. Conversations between these parties in the months of November and December prior to the making of the contract had been had but no definite agreement reached. A day or two prior to January 14 Dady went to Milwaukee for the purpose of purchasing cattle. On the morning of that day Condit called at his house, near Waukegan, as he says for the purpose of further negotiating with him about the land described in the contract. Learning his whereabouts he immediately went to Milwaukee, where the contract was entered into. Dady claims, and the allegations of his bill as to fraud are based upon this claim, that upon his inquiry Condit informed him that there was no stir in real estate in the vicinity of Waukegan and that the manufacturing company had not decided to locate there, and further, that Condit, knowing that the manufacturing company had determined to come to Waukegan, and that he would be materially influenced by that fact in the price fixed upon the property, concealed the information from him.

It seems to us clear, beyond controversy, that on the testimony of the complainant himself the question of fraud is eliminated from this case. He testifies, over and over again, that it was the understanding and agreement between himself and Condit that this contract was only to become effective, or, as he sometimes says, only to be made, upon his returning to Waukegan and ascertaining whether Condit's statements were true,—that is,

whether there was any stir in real estate and whether or not the manufacturing company had decided to locate in Waukegan.   Nothing is better settled than that in order to entitle a party to rescind or set aside a contract for fraud, he must not only prove the fraud, but also that he relied upon the fraudulent representations and acted thereon. (Kerr on Fraud and Mistake, 73, *et seq.; Douglass* v. *Littler*, 58 Ill. 342; *Tuck* v. *Downing,* 76 id. 71.)   Therefore, even though the false representations and concealments averred in the bill were made, (which is denied by the defendant,) still, by his own positive proof that he did not rely upon those statements and did not act upon them in making the contract,—in other words, that he did not believe the statements to the extent of acting upon them,—complainant wholly failed to make out a case of fraud, and while in the petition for rehearing that branch of the case is insisted upon with earnestness, it was not so contended upon the former submission.

The decree of the circuit court, then, if it can be maintained at all, must be upon the allegation that the contract was never delivered.   This theory of the bill is not, as we understand, one of mere non-delivery, in the sense that the delivery of a deed is essential to its validity, but that by agreement of parties the contract was only to take effect upon both parties ordering Whitney, to whom it was delivered, to surrender it to Condit.   After the contract was signed by the parties at Milwaukee they agree that the question came up as to what should be done with it, and it was finally put into an envelope and directed to Whitney at Waukegan, with the endorsement on the envelope:   "Not to be opened until R. Dady and J. M. Condit call.—Put in your safe."   Dady's testimony is to the effect that it was thus placed in the custody of Whitney that he (Dady) might, on his return to Waukegan, ascertain whether Condit had told him the truth in regard to real estate transactions and the location of the factory at Waukegan, and that the agreement was to take

effect only upon his obtaining such satisfactory information and consenting to the surrender of the agreement. Condit, on the other hand, testifies to the effect that the contract was consummated by the signing of the instrument in writing, and nothing remained to be done to perfect it, it being placed in the hands of Whitney merely as a custodian. The formal delivery of the paper was in no legal sense essential to its binding effect on the parties. It was a mere mutual agreement. It was no more necessary that Dady should deliver it to Condit than that Condit should deliver it to Dady. It might, in the ordinary way of transacting such business, have been held by Condit, made in duplicate, and a copy retained by each party, or, as was done, placed in the hands of a third person to hold for both contracting parties. Therefore sending the instrument to Whitney was perfectly consistent with its validity from and after its execution, and we are wholly unable to see how the directions to Whitney in any way indicated a contrary intention. The endorsement on the envelope certainly was no more consistent with Dady's contention that the contract of sale was only to be made upon his returning to Waukegan, than with Condit's claim that it was then and there fully entered into and executed as it purported to be upon its face. It does not, as seems to be thought, corroborate Dady rather than Condit.

All that is said, then, about the agreement not being delivered, resolves itself into the question whether or not it was the understanding of the parties that the contract was not to take effect until Dady returned to Waukegan and satisfied himself as to the situation there. On this issue the clear preponderance of the evidence is with Condit. The contract itself is a strong refutation of Dady's testimony, and we are able to discover nothing in the facts in this case to justify the giving of less credence to the evidence of Condit than that of Dady. Condit's testimony, to say the least, is consistent through-

out, whereas that of Dady, in so far as it attempts to
establish the allegation that he was induced to enter
into this contract through fraudulent representations
and concealments, and at the same time that he did not
enter into it but reserved the right to investigate for
himself, is inconsistent, contradictory and unreliable.

Considerable importance is attached to the circum-
stance of Condit going to Milwaukee and there insisting
upon and urging the consummation of the transaction.
That circumstance, if entitled to weight, would go only
to the question of fraud, which, as we have seen, is out
of the case. Condit's testimony, however, is to the effect
that on the 8th of January prior, he called on Dady and
had some conversation with him in regard to the pur-
chase; that Dady then offered to sell him the land for
$150 per acre and that they then separated, he telling
Dady that he would "be out in a few days," and in this
testimony he is fully corroborated by a witness who
accompanied him, named Loesby.   It is in evidence that
other parties were obtaining options upon real estate on
the faith of the location of the manufacturing works in
the city, and while there is some testimony tending to
show that confidence in the location of the plant was
stimulated about this time, there is no proof of positive
information on the part of Condit or such excitement in
the neighborhood as to impress him or others with the
belief of its location.   At all events, in view of all the
evidence we do not regard the fact of Condit's going to
Milwaukee and there consummating the trade as a cir-
cumstance of such controlling importance as that it should
be allowed to discredit him as a witness.   The parties
undoubtedly each speculated more or less upon the prob-
ability of the location of the manufacturing works. Dady
did not believe, as he himself says, that the location
would be made, but he was willing to get, if he could, a
high price for his land on the belief that others had in
its location.   Condit doubtless bought it expecting to

realize a profit upon it in case the factory was located at Waukegan. It turned out as he hoped; the contract was a bad one for Dady, but we are unable to see how, upon this record, that contract can be set aside without violating plain and well settled principles of law.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. Justice Baker: I do not concur in this opinion and judgment.

Mr. Justice Cartwright took no part.