## JOHN MELAND v. A. F. YOUNGBERG.[1]

January 30, 1914.

Nos. 18,402—(201).

**Sale — warranty — parol evidence.**

1. Where a written contract for the sale of personal property is complete in itself and fails to disclose the existence of a warranty, parol evidence is not admissible for the purpose of proving a warranty.

**Construction of contract of sale.**

2. Whether the written contract expresses the entire agreement of the parties must be determined from the contract itself in the light of the subject-matter with which it deals and of the circumstances attending its execution.

**Parol evidence to prove fraud.**

3. Parol evidence is admissible for the purpose of proving fraud and deceit.

**Action for deceit — false representations.**

4. To maintain an action for deceit based upon false representations, it is incumbent upon plaintiff to show that he relied upon such representations and was deceived thereby to his injury.

[1] Reported in 145 N. W. 167.

Note.—The question of the right to show parol warranty in connection with a contract of sale of personalty is discussed in a note in 19 L.R.A.(N.S.) 1183.

As to the purchaser's right to rely on representations as to title to real property, see note in 39 L.R.A.(N.S.) 1143. And on the general question of the right to rely on representations, see note in 37 L.R.A. 593.

**Same.**

5. If a purchaser relies in part upon his own examination as to the character and condition of the property, and in part upon the representations of the adverse party and is deceived thereby to his injury, he may maintain an action for such deceit.

**Same — personal investigation by buyer.**

6. But if the purchaser undertakes to and does investigate and determine the entire matter for himself, and is afforded an opportunity to make his investigation as full and complete as he chooses, and he then accepts the property, he cannot be heard thereafter to assert that he relied upon misrepresentations of the adverse party. In the instant case, it is *held* that the admitted facts bring plaintiff within this rule.

Action transferred to the district court for Becker county. The complaint alleged two causes of action, the first for damages for alleged fraud and deceit in the exchange of certain machinery and the second for damages for breach of an alleged oral warranty. The substance of the complaint is stated in the opinion. The case was tried before Nye, J., who granted defendant's motion to dismiss the action. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

*Christian G. Dosland,* for appellant.

*Johnston & Dennis,* for respondent.

TAYLOR, C.

Plaintiff and one John Chial were the owners, subject to a chattel mortgage, of a steam plowing rig consisting of a 25 horse-power Reeves engine and 10 plows. Defendant was the sole owner of a second-hand 22 horse-power gasolene traction engine, and he and Chial were the owners of six plows used therewith. On December 18, 1911, plaintiff and defendant entered into the following contract for the exchange of properties which was executed in duplicate:

"This agreement made and entered into by and between A. F. Youngberg party of the first part and John Meland party of the second part:

"In consideration of a deal by and between the above mentioned parties, whereby the first party to this agreement becomes the owner

of the second party's one-half interest in his One Reeves 25 H.P. steam engine and plows and the second party becomes the owner of the first party's sole interest in one 22 H.P. traction Hart Parr Gasolene engine all complete and in running order, and six traction plows now in Ulen. In consideration of the above deal the first party agrees to assume the second party's share of his indebtedness for the Reeves Steam engine, which is evidenced by notes and secured on said engine to the amount of $1,787.50 Dollars and of which the first party agrees to assume and pay the sum of $893.75 Dollars, being the second party's share of indebtedness in the above steam engine.

"First party is to receive the sum of $528.24 Dollars, being the difference in the deal between the first and second party and which is to be paid by the second party in sums as follows:

"Notes secured on 22 H. P. gasolene engine.

"One Hundred Dollars on demand or when gasolene engine is accepted by the second party.

"Two Hundred & Fourteen & 12/100 Dollars due Nov. 1st, 1912.

"Two Hundred & Fourteen & 12/100 Dollars due Nov. 1st, 1913.

"Notes payable on or before with interest at the rate of 7% per annum payable annually.

"The first party to this agreement has inspected the steam engine that he is to receive and accepted same to be as represented and this agreement to be binding on him.

"It is agreed that said second party or his agent may view the gasolene engine above-mentioned, and, if found to be otherwise than as represented or as understood by said second party, this agreement to be null and void and not binding on the second party to this agreement.

"Notes and mortgages as above mentioned have been left in The First National Bank of Ulen, Minn. in escrow pending consummation of this agreement.

"A. F. YOUNGBERG<br>"JOHN MELAND

"Witnesses.

"L. Lofgren

"E. A. Westin."

The contract was executed at Ulen, Minnesota, where plaintiff resided, and plaintiff, defendant and Chial were present. The notes and chattel mortgage provided for in the contract were also executed at the same time. In connection with the transaction, plaintiff paid Chial $225 for his interest in the plows belonging to the gasolene outfit. In the complaint, plaintiff alleged that he made this payment at the instance and on behalf of defendant, and under an agreement that the amount thereof should be indorsed as a payment upon the notes mentioned in the contract. Defendant denied this. It is not necessary, however, to consider this issue, for, as we understand the stipulation made at the close of the trial, this payment, and the questions concerning it, were withdrawn and eliminated from the case.

When the contract was executed, the steam rig was in plaintiff's possession at Ulen and the plows belonging to the gasolene rig were also at Ulen, but the gasolene engine was at Sykston, North Dakota. It is admitted that one copy of the contract and the notes and chattel mortgage were to be held by the bank at Ulen, until plaintiff should examine and accept the gasolene engine; and it is also admitted that in case he accepted the engine he was to take it at the place where it was then located. Toward spring plaintiff sent one Hanson to Sykston to examine the engine, and gave him authority to accept it and ship it to Ulen, if found to be satisfactory. Hanson examined and accepted the engine, and on March 1, 1912, shipped it to Ulen, and made the following indorsement upon one of the duplicate contracts:

Sykston, N. D. Mch. 1st, 1912.

I, Haakan Hanson, accept this Hart Parr Gasolene-engine now owned by A. F. Youngberg, with the understanding that A. F. Youngberg, party of the first part, is to furnish a new right-hand cylinder & John Meland, party of second part, to furnish all other repairing.

"HAAKAN HANSON

"Agent for John Meland."

It is admitted that defendant promptly furnished the new cylinder. It is also admitted that, after the arrival of the engine at Ulen, plaintiff and defendant went to the bank together and indorsed upon the duplicate contract held by the bank the form of acceptance already indorsed upon the other duplicate by Hanson, and that plaintiff him-

124 M.—29.

self then signed this acceptance, and that immediately thereafter by his direction the notes and chattel mortgage held in escrow by the bank were delivered to defendant. Plaintiff thereupon removed the gasolene rig from the railway station, and, about a month later, defendant took possession of and removed the steam rig from plaintiff's premises.

In February, 1913, plaintiff brought this suit and set forth two causes of action, the first for damages for alleged fraud and deceit, and the second for damages for breach of an alleged oral warranty. Both causes of action are based upon the same facts, and rest upon the averment that, during the negotiations which preceded the making of the contract, defendant represented, in substance, that the gasolene-engine was a first-class engine, well made and in first-class condition and repair; and that it would do first-class work, would develop as much power and give as good satisfaction as a new engine of the same make, and would develop sufficient power to haul six plows in operation. Plaintiff further alleged that he relied upon these representations; that they were not true; and that defendant knew that they were not true at the time of making them.

At the trial the court excluded all oral testimony offered for the purpose of proving these representations, upon the ground that they tended to vary the terms of the written contract, and that plaintiff was concluded by such contract, and by his examination and acceptance of the property under and in accordance with the terms thereof. At the close of plaintiff's case the action was dismissed on motion of defendant. Plaintiff made a motion for a new trial which was denied and he appealed.

The only question for determination is whether the court erred in excluding the proffered testimony.

No claim is made that the written contract was not fully understood, nor that it failed to contain the exact terms and provision which the parties agreed should be embodied therein.

1. It is the settled law of this state that a warranty made in connection with the sale of personal property is a part of the contract of sale; and, if the contract of sale is in writing and is complete in itself and fails to disclose the existence of a warranty, that parol evidence

of a warranty is not admissible, for the reason that it would vary the terms of the contract as expressed in the writing. Thompson v. Libby, 34 Minn. 374, 26 N. W. 1; McCormick Harvesting Machine Co. v. Thompson, 46 Minn. 15, 48 N. W. 415; Bradford v. Neill, 46 Minn. 347, 49 N. W. 193; Wisconsin Red Pressed-Brick Co. v. Hood, 54 Minn. 543, 56 N. W. 165; Wheaton Roller-Mill Co. v. John T. Noye Mnfg. Co. 66 Minn. 156, 68 N. W. 854; D. M. Osborne & Co. v. Josselyn, 92 Minn. 266, 99 N. W. 890; McNaughton v. Wahl, 99 Minn. 92, 108 N. W. 467, 116 Am. St. 389. Whether the written contract is complete and expresses the entire agreement of the parties must be determined from the contract itself, in the light of the subject-matter with which it deals and of the circumstances attending its execution. Wheaton Roller-Mill Co. v. John T. Noye Mnfg. Co. 66 Minn. 156, 68 N. W. 854; Potter v. Easton, 82 Minn. 247, 84 N. W. 1011; McNaughton v. Wahl, 99 Minn. 92, 108 N. W. 467, 116 Am. St. 389; Minnesota Trading Co. v. Penn Oil & Supply Co. 108 Minn. 221, 121 N. W. 907; Grant v. King, 117 Minn. 54, 134 N. W. 291.

The contract in controversy, when so considered, is complete in itself; and the express reservation to plaintiff of the right to examine the engine and to determine, after such examination, whether he would accept or reject it, indicates that the parties did not have in contemplation the existence of a warranty as an element of the contract. The proffered testimony was not admissible for the purpose of proving the alleged warranty.

2. Parol evidence is admissible, however, for the purpose of proving fraud and deceit. Kerrick v. G. W. Van Dusen & Co. 32 Minn. 317, 20 N. W. 228; Cooper v. Finke, 38 Minn. 2, 35 N. W. 469; Lewis v. Willoughby, 43 Minn. 307, 45 N. W. 439; Vilett v. Moler, 82 Minn. 12, 84 N. W. 452; O'Malley v. Great Northern Ry. Co. 86 Minn. 380, 90 N. W. 974. The testimony tendered was competent for that purpose and should have been admitted, unless it appeared from the undisputed facts that plaintiff was not entitled to recover, even if he proved the misrepresentations charged.

To establish a claim for damages based upon the making of false representations, plaintiff must show that he relied upon such repre-

sentations to his injury.    Although one party may make representations which are untrue, yet, if the other party, instead of relying thereon, makes an independent investigation of his own, either in person or through his agents, and acts upon the result of such investigation without regard to the representations made by the adverse party, the rule is well-nigh universal that such representations do not give rise to a cause of action.    The following brief excerpts will serve to indicate the views expressed by the courts.

"Where the purchaser undertakes to make investigations of his own, and the vendor does nothing to prevent his investigation from being as full as he chooses to make it, the purchaser cannot afterward allege that the vendor made misrepresentations."    Southern Development Co. v. Silva, 125 U. S. 247, 8 Sup. Ct. 281, 31 L. ed. 678.

"No representation can amount to an actionable deceit or fraud which is not relied on by the party claimed to be defrauded.    If he has an opportunity to make an examination of the article purchased as to quality, and does so, and acts on his own judgment, there is no room for deceit."    Moses v. Katzenberger, 84 Ala. 95, 4 South. 237.

"It is held that, even, if fraudulent representations are made respecting a given subject, and the party to whom the representations are made does not rely upon such representations, but seeks from other quarters to verify the statements made, he cannot afterwards claim that a deceit has been practiced upon him by the party originally making the representations.    Bigelow on Fraud, 87, and cases cited."    Anderson v. McPike, 86 Mo. 293.

"While it is true fraud vitiates all contracts, yet every false affirmation does not amount to a fraud.    A knowledge of the falsity of the representation must rest with the party making it, and he must use some means to deceive or circumvent.    Walker v. Hough, 59 Ill. 375. The fact that appellants made a personal examination of the logs before making the contract, shows that they did not rely upon what was said by Wilcox; and the fact that Wilson insisted upon an examination, repels the idea that he was trying to deceive."    Fauntleroy v. Wilcox, 80 Ill. 477.

"Where it is shown, as in this case, that a person has ample op-

portunity of examining for himself, he cannot rest his rights upon the statements of others. It is his business to inquire into and ascertain what those rights are. 'A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness.' Slaughter's Admr. v. Gerson, 13 Wall. 379, [20 L. ed. 627.]" Short v. Pierce, 11 Utah, 29, 39 Pac. 474.

"Where one has the opportunity to examine for himself and fails to do it, but purchases on the representations of another, if he be deceived, he must suffer from carelessness and want of care. So, if in a case like the one at bar, where the means of information were not only accessible, but were availed of, and a personal examination made, equity will not allow him to say that he was induced to purchase on the statements and representations of the vendor. Morgan v. Snapp, 7 Porter (Ind.) 537; Bolton v. Branch, 22 Ark. 435; Adam's Equity, 179, 187." Grider v. Clopton, 27 Ark. 244.

"When a party buys property, relying on his own judgment, he cannot avoid the contract on account of misrepresentations." Hess v. Young, 59 Ind. 379.

"We also think the evidence utterly fails to show that plaintiff believed these representations, and relied on them in making the purchase. It is true that in his examination in chief he states generally that he relied on them; but his cross-examination conclusively shows that he did not rely on them *as true* when he made his purchase. * * * He made his purchase, not because of any belief in their *truthfulness,* but because he thought Merriam would be liable as warrantor to make them good if they proved untrue. On such a state of facts, as the court below well remarked, if plaintiff made out anything, it was a cause of action on a warranty and not for deceit." Humphrey v. Merriam, 32 Minn. 197, 20 N. W. 138.

"Where one investigates fully for himself, he cannot claim reliance on the representation of another; but partial investigation and reliance in part will not bar an action for deceit." Freeman v. F. P. Harbaugh Co. 114 Minn. 283, syllabus, 130 N. W. 1110.

To the same effect are the following: Cobb v. Wright, 43 Minn. 83, 44 N. W. 662; Farrar v. Churchill, 135 U. S. 609, 10 Sup. Ct.

771, 34 L. ed. 246; Farnsworth v. Duffner, 142 U. S. 43, 12 Sup. Ct. 164, 35 L. ed. 931; Slaughter v. Gerson, 13 Wall. 379, 20 L. ed. 627; Wade v. Ringo, 122 Mo. 322, 25 S. W. 901; Tuck v. Downing, 76 Ill. 71; Brown v. Leach, 107 Mass. 364; Poland v. Brownell, 131 Mass. 138, 41 Am. Rep. 215; Attwood v. Small, 6 Clark & F. 232; Dady v. Condit, 163 Ill. 511, 45 N. E. 224; Crocker v. Manley, 164 Ill. 282, 45 N. E. 577, 56 Am. St. 196; Bell v. Byerson, 11 Iowa, 233, 77 Am. Dec. 142; Colton v. Stanford, 82 Cal. 351, 23 Pac. 16, 16 Am. St. 137; Farrell v. Lovett, 68 Me. 326, 28 Am. Rep. 59; Port v. Williams, 6 Ind. 219; Pearce v. Carter, 3 Houst. (Del.) 385; Leavitt v. Fletcher, 60 N. H. 182; Weaver v. Shriver, 79 Md. 530, 30 Atl. 189.

Many cases hold that, if the buyer can investigate and determine the facts for himself and has been afforded a proper opportunity to do so, he is wanting in ordinary prudence, if he rely upon the representations of the adverse party instead of making such investigation, and that he cannot maintain an action for deceit based upon representations as to matters which he ought to have determined for himself.

This court, however, in consonance with the weight of authority has held that, if the buyer, instead of investigating as fully as he might, made only a partial investigation, and relied in part upon such investigation and in part upon the representations of the adverse party, and was deceived by such representations to his injury, he may maintain an action for such deceit.    Moline-Milburn Co. v. Franklin, 37 Minn. 137, 33 N. W. 323; Marshall v. Gilman, 52 Minn. 88, 53 N. W. 811; Freeman v. F. P. Harbaugh Co. 114 Minn. 283, 130 N. W. 1110; Brown v. Andrews, 116 Minn. 150, 133 N. W. 568; Rudolphi v. Wright, supra, page 24, 144 N. W. 430.

But, if the buyer undertakes to investigate and determine the entire matter for himself, and is afforded a full and fair opportunity therefor, and in fact does make such investigation, and is permitted to make it as full and complete as he chooses, and he accepts the property after such investigation, the authorities are practically unanimous that he cannot be heard thereafter to assert that he relied upon the representations of the adverse party.

Of course, if by trick or artifice he was prevented from discovering some material fact, or induced to omit some examination or inquiry which would have disclosed matters of which he was ignorant, such trick or artifice may constitute actionable fraud.

In the case at bar, plaintiff undertook to investigate and determine for himself whether he would accept the engine. To secure him the absolute right to reject it and annul the contract, if he should so elect, the notes and mortgage were not delivered, but were to be held by the bank until he should make his decision. He sent Hanson to make the examination, and authorized him to accept the engine, if found to be satisfactory, and to reject it if not found to be satisfactory. He directed Hanson, if he accepted the engine, to take possession of it and ship it to Ulen. Hanson went to Sykston and made the examination. The nature and extent of his investigation does not appear, but, as he was at Sykston for two weeks, he certainly had sufficient time to make it reasonably complete. No claim is made that it was not as full and complete as he desired, nor that defendant interfered with or restricted his investigations in any manner. Neither is it claimed that he had any knowledge of the representations alleged to have been made by defendant.

As the result of his own personal investigation, he accepted the engine and shipped it to Ulen in accordance with his instructions. After it reached Ulen, plaintiff himself accepted it by a formal indorsement upon duplicate contract held by the bank, made for the express purpose of informing the bank that he had satisfied himself as to the engine and that the time had arrived for the bank to deliver the notes and mortgage.

The admitted facts show that plaintiff undertook to determine the entire matter for himself; that he made his own independent investigation and acted upon his own judgment or that of his representative, and it necessarily follows that he is precluded from now asserting that he relied upon the representations of the defendant.

Order affirmed.