## NIXON v. COOKE et al. (No. 7466.)*

(Court of Civil Appeals of Texas. San Antonio.
Jan. 6, 1926. Rehearing Denied
Feb. 3, 1926.)

**1. Fraud ⬥20—Buyer inspecting cotton seed held not entitled to recover for representations as to germination.**

Buyer of cotton seed under written contract which recited inspection by him, and wherein sellers expressly disclaimed any warranty of quality or germination, *held* not entitled to recover damages for alleged fraudulent representations as to germination and suitability for planting.

**2. Bonds ⬥137—Sellers forced to sue before receiving payment held entitled to recover attorney's fees.**

Sellers of cotton seed, forced to sue on vendor's lien notes before receiving payment, *held* entitled to recover attorney's fees provided for in bond required by contract of sale.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by S. Maston Nixon against C. H. Cooke and others, wherein the defendants filed cross-action. Judgment for defendants on both main action and cross-action, and plaintiff appeals. Affirmed.

H. J. Passmore, of Robstown, and Kleberg & North, of Corpus Christi, for appellant.

Boone & Savage, of Corpus Christi, for appellees.

COBBS, J. [1] Appellant sued appellees to recover damages alleged to have been sustained by him on a certain contract for the purchase of cotton seed from appellees, which contract appellant alleged he was induced to enter into through fraudulent representations of the appellees. Appellant was engaged, at the time, in the business of buying cotton seed from growers and reselling it in and throughout Texas and elsewhere as planting seed— dealing only in seed from long staple, high grade cotton. Appellees raised a crop of high grade, long staple cotton during the years 1922 and 1923; and about the 16th day of November, 1923, appellant entered into a written contract for the purchase from appellees of all the seed grown by them on said farm, except 7,500 bushels. It was alleged that the total amount of such seed was 544,959 pounds. Such class of cotton seed sold in the market at a price higher than seed from ordinary cotton or seed used by oil mills.

Appellant alleges: That after making the contract he resold said seed to various planters at a profit of 40 cents per bushel over and above the price he had contracted to pay appellees, and had they not gone through a heat was 40 cents per bushel more than the price he contracted to pay for them. That he did not discover the seed had gone through a heat

until he began to receive them for shipment, and in order to save them it became necessary to have them culled at a cost of $961.66. That he discovered then for the first time that only 192,864 pounds of the seed could be used in filling orders, and that 352,095 pounds were rendered worthless by having gone through a heat, the contract price of which was $11,964.62, and the total price received by him for said seed was $4,821.71. The reasonable market value of the seed in the damaged condition, plus the expense incurred of $916.66, gives the damage of $7,142.-91. That after the filing of the suit appellant ascertained that 1,250 bushels sold to a purchaser in Oklahoma were found worthless for planting, and, had they not gone through a heat, would have sold at a profit of 40 cents per bushel, to his damage of $4,401.18. Appellant prayed for damages in the sum of $13,029.09.

Appellees urged various exceptions, general and special, to the petition, which were overruled by the court; and thereupon appellees presented their answer by general denial and special answer and cross-action.

The cause was tried with a jury, but at the close of the testimony the court instructed the jury to return a verdict for appellees, upon the written motion of appellees, and accordingly a verdict was returned in appellees' favor for $442.41. Whereupon the court entered judgment for said amount in favor of appellees.

Appellant, during the negotiations for the purchase of the cotton seed, agreed to meet appellees on their farm; he did this and made a personal examination and inspection of the cotton seed with Walton, one of the appellees. Appellees gave appellant every opportunity for examination of the cotton seed, and he inspected it to his own satisfaction. Thereafter appellant prepared a written contract and tendered the same to appellees, but they refused to execute it. Appellant testified:

"We did not discuss this part of the contract where I proposed that the seed were to be sound and of good germination and suitable for planting; that wasn't discussed. They didn't sign this contract. They declined to sign this contract. We did make a contract. The contract handed to me is the contract that was made by C. H. Cooke, W. W. Walton, and myself. I signed this contract."

The contract, among other provisions, contains the following stipulations:

"Second. Second party has personally inspected all said seed herein agreed to be purchased by him, and pronounces same sound and in good condition and acceptable to him, and shall take same as in its present condition without any responsibility on the part of first parties as to the quality, fertility, or soundness of said seed.

---

"Said seed shall remain in present storage until second party removes same as hereinafter provided, and first parties agree to open and shut doors to houses where seed is stored according to weather conditions, but second party is to make periodical inspection of said seed in meantime at his own expense, and do such work as is necessary in turning seed to keep it in good condition until he removes same.

"Third. Second party is to remove said seed from said barns of first parties to his own warehouse in the city of Robstown, Nueces county, Texas, and shall begin to remove same on January 1, 1924, unless weather conditions prevent, and in such case as soon thereafter as such conditions permit, and shall complete the removal of all such seed by March 1, 1924, unless prevented by weather conditions, in which event he shall be entitled to a reasonable extension of time not to exceed 30 days. * * *

"Payments for said seed by second party shall be made by second party to first parties at the agreed price aforesaid as said seed is removed by him once a week for the seed that week removed by him, and the title to all such seed shall remain in first party until paid for by second party. * * *

"Sixth. It is expressly understood and made part of the consideration of this contract that first parties do not warrant, either expressly or impliedly, the quality, description, fertility, condition, or productiveness or any other character of said seed.

"Seventh. Second party shall secure to first parties the faithful performance of this contract by a bond in the sum of four thousand dollars ($4,000), payable to first parties at Corpus Christi, Nueces county, Texas, conditioned upon the full and faithful performance of this contract by second party, and shall secure the same by first vendor's lien land notes in an amount at least equal to the penalty of said bond, indorsed by him and attached to and delivered with such bond to first parties contemporaneous with the execution of this contract.

"Signed in duplicate, each of the parties retaining a copy, this the 16th day of November, A. D. 1923.

"[Signed]          C. H. Cooke,
        "W. W. Walton,
                "First Parties.
    "S. Maston Nixon,
                "Second Party."

This case is based upon a written contract, all the issues of which were discussed prior to the execution of the contract, and are foreclosed by and merged into the written contract between the parties. The question of heated and spoiled cotton seed was fully discussed and understood by the parties prior to and before the execution of the written contract. Appellant himself made a personal investigation, put his hand in the cotton seed and discovered some heat, which he mentioned at the time, but made no further investigation or any objection at the time. He took away with him a handful of cotton seed, presumably for further tests.

Though appellant called attention of appellees to the heated cotton seed at the time of inspection, he thereafter drew a contract, and himself tendered it to appellees, containing a provision, "that the seed were to be sound and of good germination and suitable for planting," which contract appellees declined to agree to or sign; but in lieu thereof appellees drew another contract, among other things, containing the very opposite provision, to the effect that appellant had "personally inspected all said seed herein agreed to be purchased by him and shall take same as in its present condition without any responsibility on the part of the first parties, as to the quality or soundness of said seed"; and said contract was executed by appellant.

Appellant seems not only to be an expert on the question of cotton seed, but in drawing contracts, for the one submitted by him, which appellees had perspicuity enough to turn down, was diametrically opposite to appellees' agreement. If appellees had signed the contract tendered by appellant it would have cut off their contention that there was no fraud or warrant as to soundness of the seed, and would have left open the question of the inspection made, which is so important for consideration here. "As men bind themselves so must they stand bound."

The contract was perhaps executory to the extent that the seed were to remain on the premises and appellant was not required to begin removing them until on January 1, 1924, unless weather conditions prevented, but he was to complete the removal by March 1, 1924, unless weather conditions prevented, in which event he was to be entitled to a reasonable time, not to exceed 30 days. The consideration was $1 per bushel net to appellees at their barn on their scale of weights, but by modification the appellant had the privilege of reweighing the seed on bonded scales, at his own expense, the difference in weight to be equally divided, and payment by appellant was to be made once a week as the seed was removed. Appellant made an independent investigation, examination, and inspection of the seed prior to the execution of the contract, and appellees refused to warrant, expressly or impliedly, the soundness of the seed, and insisted upon the stipulation contained in the written contract. Thereafter, and while the contract was still executory, appellant alleges he discovered the bad condition of the cotton seed, but he still continued to perform said contract, procured an extension of time for its removal, and secured a change of the contract in respect to weighing and culling for his sole benefit. Appellant is in no position to secure any relief from the terms of the contract, for the undisputed evidence shows he made an independent investigation for himself, examined and inspected the seed, and had full opportunity to make the inspection before he executed the contract and knew that appellees had refused and continued to refuse to warrant the soundness of the seed. It stood thus: Appellant either had to purchase the seed upon his own inspection without guaranty or leave

them alone. He concluded to do the former, and by accepting the same, without the written guaranty of soundness, but with the negative provisions, he is estopped to cry out fraud, fraud, fraud, when there is no fraud shown. If so, appellant condoned it.

After all this appellant executed the contract in every particular save one, and that one was a failure to pay the consideration. Wooters v. International & G. N. R. Co., 54 Tex. 294; Bruner Bros. v. Strong, 61 Tex. 555; Zavalla Land & Water Co. v. Tolbert (Tex. Civ. App.) 165 S. W. 34; 12 R. C. L. § 108, pp. 352, 355; Haley v. Manning, 2 Tex. Civ. App. 17, 21 S. W. 711; Nounnan v. Sutter County Land Co., 81 Cal. 1, 22 P. 515, 6 L. R. A. 219; Meland v. Youngberg, 124 Minn. 446, 145 N. W. 167, Ann. Cas. 1915B, 775; Newman v. Lyman (Tex. Civ. App.) 165 S. W. 136; Luckenbach v. Thomas (Tex. Civ. App.) 166 S. W. 103; 26 C. J. 1162, § 75; Patterson v. Bushong (Tex. Civ. App.) 196 S. W. 962.

Really, there is no evidence of fraud shown in this case whatever on the part of appellees in making the sale of the cotton seed, and there was no issue for the jury to find; and, the facts being undisputed the court committed no error in the instructed verdict.

[2] Appellant filed this suit on June 18, 1924, at which time he had not paid the balance due of over $4,000 which he admitted to be due; and appellees filed their cross-action for the recovery of the balance due, together with attorney's fees.

The contract provided that appellant should execute a bond in the sum of $4,000 to secure the performance of the contract by him, and secure it by certain vendor's lien notes as collateral. The bond as prescribed was executed and delivered by appellant to appellees and accepted by them. It contained an express provision for the payment of attorney's fees in event of default. Suit was filed thereon by appellees to enforce collection of the account and for the attorney's fees stipulated. Appellant tried to get appellees to take the notes in settlement of the balance due by him, and they declined. Appellant filed his amended petition March 31, 1925, and in

reply thereto appellees filed their first amended original answer and cross-action on April 1, 1925, in which they still claimed and sought to recover the stipulated attorney's fees. Appellees authorized demand to be made on Nixon. The balance paid by Nixon was not paid until long after the suit was filed. The amount of the notes was paid by the makers of the notes when the notes fell due and applied by Cooke and Walton as a credit on the balance. That was after suit was filed for collection of this balance. The contract was placed by Cooke and Walton in the hands of attorneys to enforce collection of the balance due by Nixon before the original cross-action was filed by them, and suit for the balance had been filed and was pending when the vendor's lien notes securing same were paid and, the amount of the attorney's fees has not been paid. The court peremptorily instructed a verdict for the attorney's fees, it was so returned and judgment therefor rendered.

Appellant could not force appellees to accept at their face value and give him credit for the vendor's lien notes, as he demanded. They had a right to decline to do this, as they did. Appellant neither paid nor tendered payment of the amounts that he admitted that he owed. After appellees declined to accept the notes at face value in full settlement, he forced them to sue on the obligation. The suit was pending when the notes were paid, and appellees applied the proceeds to the payment of the principal and interest due them, leaving the attorney's fees unpaid. They were entitled to the attorney's fees under the plain terms of the contract. Suit was filed to collect the balance under the contract, and it was never paid until after suit was brought. The payment was therefore enforced, and appellees were due 10 per cent. on the amount of the balance. This the court allowed them.

After having fully considered appellant's assignments and propositions, set forth in his brief, we have reached the conclusion that there is no merit therein, and no error is assigned that should cause a reversal of the judgment; so they are all overruled and the judgment of the trial court is affirmed.