## AMERICAN ALKALI CO. v. SALOM.

(Circuit Court of Appeals, Third Circuit. June 29, 1904.)

### No. 57.

1. CORPORATIONS—SUBSCRIPTION CONTRACT—FRAUD—INTENT—CURING ERROR.
    Where a subscriber to the stock of a corporation defended on the ground that he was induced to subscribe by fraudulent representations, an objection that an offer of evidence was not complete in that it did not propose to show that the statements of fact alleged to be untrue were made with a fraudulent intent, was cured by an instruction that it was necessary for defendant to show not only that the statements complained of were false, but that they were made with a fraudulent intent.

2. SAME—STATEMENT OF FACT.

Statements in a stock subscription contract that certain patents owned by persons designated were the basic patents under which the manufactured article was to be produced, and that it was proposed by the corporation to be formed, to acquire such patents and improvements for the United States, and to pay therefor 480,000 shares of the full-paid common stock of the company and $1,000,000 in cash, were statements of fact on which it was intended that subscribers should rely, and were, therefore, the proper subjects of false representations.

3. SAME—RESCISSION—TENDER OF STOCK.

Where, in an action on a stock subscription contract, defendant pleaded a rescission of the contract for false representations and fraud, and in his affidavit of defense tendered a return of his stock, such tender was sufficient, though prior to his discovery of the fraud he had sold certain of his shares, which, however, he could replace at any time by purchase in the open market.

4. SAME—RESCISSION—DEFENSE AT LAW.

A subscriber to the stock of a corporation is entitled to plead a rescission of the sale for fraud as a defense to an action at law to recover assessments on the subscription contract.

5. SAME—FALSE REPRESENTATIONS—RELIANCE.

Where misrepresentations of fact were contained in a corporate stock subscription contract itself, and were held out as material inducements to persons who were solicited to subscribe for stock, a subscriber's signature to the contract, in the absence of evidence to the contrary, was sufficient proof that he relied and acted on the faith of such representations.

6. SAME—LACHES—ESTOPPEL.

Where defendant was induced to subscribe for stock in a corporation on the faith of false representations made by the corporation itself and contained in the subscription contract, the corporation was estopped to claim that defendant was bound to investigate the truth of such statements, and was guilty of laches in failing to make any inquiry to ascertain the truth of such representations until shortly before defendant filed his affidavit of defense in a suit by the corporation to recover assessments levied on the stock.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

See 125 Fed. 1006.

Reynold D. Brown, for plaintiff in error.

John G. Johnson, for defendant in error.

Before ACHESON and GRAY, Circuit Judges, and KIRKPATRICK, District Judge.

ACHESON, Circuit Judge. This was an action by the American Alkali Company, a corporation organized under the laws of the state of New Jersey, against Pedro G. Salom, to recover an assessment of $2.50 per share upon 1,000 shares of the plaintiff company's capital stock subscribed for by the defendant. The written subscription contract, which is the foundation of the claim in suit, contains the following statements on the part of the plaintiff corporation:

"Whereas, the Commercial Development Corporation of England owns for the United States the patent rights of Mess. Hermite and Dubosc and John G. A. Rodden, together with the further improvements that may be made by these patentees for the electrolytic production of caustic soda and bleaching powder. The patents of Mess. Hermite and Dubosc are the basic patents and

that of Mr. John G. A. Rodden, by far the most efficient and economical invention yet made for the production of these important chemical products;

"And whereas, it is proposed to establish in this country at some important water power, either Niagara or Sault Ste. Marie or other advantageous point a large plant for the production of these products and for that purpose to acquire the aforesaid patents with all improvements, etc., for the United States, and to pay therefor 480,000 shares of the full paid common stock of the company and $1,000,000 in cash."

The defense rested upon the ground that these were material statements, and that they were false, and were fraudulently made. There was a verdict for the defendant, and, judgment in his favor having been entered on the verdict, the plaintiff brought this writ of error.

We will follow the groupings and order of the assignments of error presented in the brief of the counsel for the plaintiff in error in our treatment of the case.

1. The assignments of error Nos. 1–4, as to necessity of fraudulent intent.

If the offer of evidence was incomplete in that it did not propose to show that the statements of fact alleged to be untrue were made with fraudulent intent, such omission in the offer was cured subsequently. The trial judge distinctly charged the jury that it was necessary for the defendant to show not only that the statements complained of were false, but also that they were made with fraudulent intent. The instructions of the court upon this branch of the case, we think, were unobjectionable.

Even if we assume that the point was distinctly made in the court below, or is involved in any of the assignments, we cannot agree to the proposition that the defendant was absolutely concluded by reason of his negative response to the single question whether he now had any reason to doubt that Mr. Gibbs believed the statements to be true. That one answer of the witness was to be considered in connection with his entire testimony. It was for the jury to determine the question of fraudulent intent from the whole evidence in the case. That question was fairly submitted to the jury.

2. Assignments of error Nos. 5, 6.

The main question raised by these assignments is whether the statement that the patents of Hermite and Dubosc are the basic patents for the electrolytic production of caustic soda and bleaching powder was the assertion of a fact or a mere expression of opinion. The learned trial judge charged the jury that this statement was the affirmation of a fact, and he distinguished it from the statement that the Rodden patent "is by far the most efficient and economical invention yet made for the production of these important chemical products," which latter representation, he instructed the jury, was an expression of opinion. Having regard to the circumstances, namely, that the proposed enterprise was the production of caustic soda and bleaching powder by the electrolytic method, and that the statement that the patents of Hermite and Dubosc were the basic patents—that is, fundamental patents—in the production of those substances appeared in the subscription paper presented to persons who were solicited to subscribe for stock in the company, we cannot doubt that the statement was intended as an affirmation of a fact, and to be so accepted by subscribers.

The statement was not in form the expression of an opinion, but was positively made. It related to a matter of prime importance, and was apparently based on actual knowledge. Undoubtedly, it was intended that persons who were solicited to subscribe for stock should rely upon the statement as true, and act upon it. We think that the court below was quite right in charging the jury that the statement that these patents were "the basic patents" for the purpose named was the affirmation of a fact.

We are not able to give assent to the suggestion that there was no evidence tending to show fraudulent intent in making the statement that the patents were the basic patents. That the letter of Mr. Bennett, the patent lawyer, furnished a justification for that statement, we cannot affirm. The question of fraudulent intent was for the jury under all the evidence.

3. Assignment of error No. 7, as to statement of price proposed to be paid for patents.

This assignment reads thus:

"The learned judge who tried the cause erred in charging the jury as follows: 'I say, therefore, that is a statement not of what had been done, but what was proposed to be done; but that it was none the less, for that reason, a statement of fact.'"

This assignment, we think, is not well founded. The statement that it was proposed to pay for the patents 480,000 shares of the full-paid common stock of the company (equal to $24,000,000 of stock at par value) and $1,000,000 in cash was not a mere promissory statement as to future plans or expectations. The statement, especially when read in connection with the context, imported a present determination—a fixed purpose. The stated price was part and parcel of the enterprise disclosed in the subscription paper. A subscriber had a right to regard the named price to be paid for the patents as a statement of fact. That the statement was intended to be the representation of a fact is plain to us. The plaintiff company, having adopted the subscription contract, is bound by the statements of fact therein contained.

A recital of the evidence upon this branch of the case would be unprofitable, and is not called for by this assignment. We then content ourselves with saying that we think the evidence fully justified the court in submitting to the jury the question whether or not the statement as to the price to be paid for the patents was false, and, if false, whether or not the statement was fraudulently made.

4. Assignment of error No. 8.

This assignment is to the refusal of the court below to affirm the plaintiff's first point, namely, "Under all the evidence your verdict should be for the plaintiff." It is urged in support of this assignment that it appears from the testimony of the defendant upon the trial of the case that before his rescission he had sold some of the shares of common stock he had received in the transaction, but that he could at any time replace these shares by purchase in the open market. No point on this score was made upon the trial below, and we think it is hardly open to the plaintiff in error to raise the question here under the assignment to the refusal of the court to grant his general prayer

for binding instructions. But, aside from that view, the position is without merit. The defendant, in his affidavit of defense, tendered a return both of his common and preferred stock, and this was a continuing tender. We think it was a good tender, notwithstanding his sale of the few shares before his discovery of the fraud, for he could replace these shares, and make his tender effective, by purchase in the open market, and under the circumstances that was sufficient.

Under the eighth assignment the plaintiff in error contends further that the defense that the defendant's subscription was procured by fraudulent representation cannot be set up in this action at law. To sustain this position the case of Lantry v. Wallace, 182 U. S. 536, 21 Sup. Ct. 878, 45 L. Ed. 1218, is cited. But that was an action by a receiver of a national bank to enforce the statutory liability of a stockholder to pay an additional 100 per centum for the benefit of creditors, and the ruling was that, if the defendant was entitled, by reason of the fraud practiced upon him by the bank, to a rescission of his contract of purchase of stock and to a cancellation of his stock certificate, and consequently to be relieved from his statutory responsibility as a shareholder of the bank, he could obtain such relief only by a suit in equity to which the bank and the receiver were parties. In the present case, however, the action is by the corporation itself, and is brought to enforce the subscription contract. We think it very clear that in an action at law to enforce a contractual demand such as is involved here, fraud is an available defense. Russell v. Clark, 7 Cranch, 69, 3 L. Ed. 271; Insurance Company v. Bailey, 13 Wall. 616, 20 L. Ed. 501. In the case last cited equitable jurisdiction was denied upon the ground that the fraud alleged was available as a defense at law in a suit upon a policy of insurance.

5. Assignment of error No. 9, as to proof that defendant relied upon the alleged misrepresentations.

It is enough to say that the misrepresentations complained of were not statements made merely by an agent, but were contained in the subscription contract itself. Manifestly, they were material inducements held out to persons who were solicited to subscribe for stock. They were the very ground upon which subscriptions were to be made. The signature of the defendant (in the absence of evidence to the contrary) was positive proof that he relied on these representations and acted on the faith of them.

6. Assignment of error No. 10.

The plaintiff, in his fourth point, requested the court to charge that:

"If defendant was induced in May, 1899, to become a holder of the preferred stock of the plaintiff company by the misrepresentations alleged in the affidavit of defense, or any of them, then it was the duty of the defendant to use reasonable diligence to ascertain the truth of such representations. If he did not do so within a reasonable time, and did not ascertain the truth of said matter until more than two years later, then he cannot maintain any defense by means of such misrepresentations."

In response to this request the court instructed the jury that the obligation upon the defendant "was with reasonable promptness, upon being informed or in any manner learning that either of the alleged misstatements contained in this paper existed to repudiate—or, as

lawyers say, rescind—the contract"; but as to there being an obligation upon the defendant to make inquiry to find out whether the paper was true or false within any period of time, and before the question was in any manner brought to his attention, the court answered the point negatively. Under the facts of the case, these instructions, we think, were entirely right. The defendant signed the subscription contract in May, 1899. The assessment sued for was made in September, 1901. The call therefor was by the corporation itself, then a solvent and going concern, and was for the purpose, as expressed in the resolution, of "providing funds for the completion of the present works, the building of additional works, and providing working capital." This action was brought and has been prosecuted by the corporation itself. The date of the institution of this suit was December 17, 1901. The affidavit of defense, which sets up the misrepresentations complained of, was filed January 3, 1902. Information as to the falsity of the representations was not received by the defendant until very shortly before he made his affidavit of defense. We see nothing in this case which made it the duty of the defendant to make earlier inquiry to ascertain the truth of the representations contained in the subscription contract and upon the faith of which the defendant entered into the contract. In the absence of knowledge or any information as to the untruthfulness of the representations, the defendant had a right to rest upon them. Certainly it does not lie in the mouth of the plaintiff to charge the defendant with lack of diligence in discovering the fraud of which he complains. We think it may be affirmed confidently that as against the corporation itself a subscriber for stock is not bound to investigate the truth of statements upon the strength of which he subscribed. The Directors, etc., of the Central Railway of Venezuela v. Kisch, Law Rep. 2 H. L. 99; Upton v. Englehart, 3 Dill. 496, Fed. Cas. No. 16,800; Mead v. Bunn, 32 N. Y. 275.

The appointment of a receiver for the company since suit brought cannot affect the rights of the parties which had become fixed.

We are of opinion that this record is free from error, and accordingly the judgment is affirmed.