# HERBERT G. FREEMAN v. F. P. HARBAUGH COMPANY.[1]

May 5, 1911.

Nos. 17,141—(165).

**Principal bound by agent's representations, when.**

One who accepts a sale of property negotiated through the medium of another is bound by the representations made to accomplish the sale.

**Ignorance regarding representations made.**

It is immaterial that the party making the representations has no actual knowledge as to their accuracy, provided they are relied on by the party to whom they are made.

**Reliance on representations made.**

Where one investigates fully for himself, he cannot claim reliance on the representation of another; but partial investigation and reliance in part will not bar an action for deceit.

**Insolvency of makers of notes — measure of damages.**

In an action for damages for fraudulently representing the financial standing of the makers of promissory notes, the measure of damages is the difference between the value of the notes and the amount paid for them; but where the makers of the notes are insolvent, and the value was measured by the value of the mortgage security, the amount realized at a public sale of the property may be shown, as bearing on the value of the notes at the time of their purchase.

Action in the district court for Hennepin county to recover $1,-152.85 for false representations in the sale of certain notes. The answer admitted that defendant assigned to plaintiff the notes and mortgage described in the complaint, and that plaintiff paid therefor. The case was tried before Booth, J., and a jury which returned a verdict in favor of plaintiff for $1,078.02. From an order denying defendant's motion for judgment in its favor notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*J. F. Hilscher* and *Arthur J. Stobbart,* for appellant.

*George S. Grimes,* for respondent.

[1] Reported in 130 N. W. 1110.

LEWIS, J.

Action to recover damages for falsely representing that the makers of certain promissory notes were solvent and that the chattel mortgage securing them was a first lien upon a threshing machine outfit. Plaintiff recovered a verdict.

Defendant company was located at St. Paul, and handled the Russell line of threshers. Isaac Lee represented the company at Wheaton, Minnesota, and sold its machines on commission. Plaintiff resided at St. Louis Park, near Minneapolis, and early in November, 1905, wrote to Lee, expressing a desire to purchase notes taken in settlement on the purchase of machines. The letter contained this statement: "I would be willing to furnish the cash to meet your settlements with the thresher company, you turning over to me the thresher notes, or, in other words, I would buy from you the thresher paper at your contract discount for cash as given by the thresher company." Lee replied that he had notes amounting to perhaps $5,000, and offered to send a list for plaintiff's investigation, inviting him to come to Wheaton and look them up. Plaintiff replied November 9, stating that he could not go, and expressed the belief that the matter could be arranged by correspondence, and requested a full statement of the notes, security, address of makers, and whether Lee recommended the sales proposed. In reply to this letter Lee answered, November 18, in part as follows: "In regard to the notes, I could sell you three notes, the balance due on engine sold to August and Ed Graf:

"One note dated July 20, 1905, due 10–1–06 ............. $475
"One note dated July 20, 1905, due 10–1–07 ............. 475
"One note dated July 20, 1905, due 10–1–08 ............. 475

"He makes a similar payment on the engine this year. The notes are secured on a Russell engine, which I sold him this year. Mr. Gust Graf has 160 a. of well-improved land, and has as nice a farm as there is in this community. The land is worth from $40 to $45 an acre. Mr. Graf owes on this land, secured by mortgage on same, I think, about $1,400. His credit for anything he wishes to buy in this community is good. If you wish any bank reference, you may write the State Bank here at Wheaton. Ed Graf is Gust

Graf's son. He stays at home .with his father on the farm, and helps run the threshing machine in the fall. He is a good, hard-working young man. These parties live about 11 miles south of town here, and are on a rural delivery running out of Barry, Minnesota. * * * "

Plaintiff answered November 21, stating that he would investigate the parties, and inquired if the notes had to be sent to the home office for indorsement. Lee answered November 23 that the Graf notes would have to be sent to the company to be transferred. Plaintiff wrote Lee December 1 as follows:

"I am investigating your paper. I wrote your bank of Wheaton on the 25th ult., but have had no reply. I am touching them up to-day. I think I will take the Danielson & Graf notes. Will you make a dft. on me for the amount, with notes properly indorsed to me, and subject to examination; or how would you suggest the transfer being made?"

On December 4 Lee wrote plaintiff that the Graf notes were payable to the company, and that he had instructed the company to transfer the notes to plaintiff. December 8 plaintiff wrote Lee that defendant had phoned that the deal was not understood, and that Lee had been written for an explanation. Lee answered December 11 stating that he had written the company to assign the paper to plaintiff and allow him a discount of ten per cent.

Plaintiff testified that he paid Mr. F. P. Harbaugh, who represented the defendant, the sum of $1,282.50, and received from him the Graf notes and a certified copy of a chattel mortgage, dated July 20, 1905, executed by August and Edward Graf to defendant, to secure the three notes in question and another of the same amount due October 1, 1905. On its face the mortgage was a first lien on a traction engine, a separator, stacker, feeder, and weigher, all manufactured by the Russell Company. Indorsed on the back of the copy was a statement, over the signature of the town clerk, of date July 24, 1905, to the effect that there was no other mortgage covering the same property on file in his office. It was shown that August Graf had executed a chattel mortgage to defendant August 12, 1904, to secure $550 upon the same property except the engine.

This mortgage was foreclosed in the fall of 1906. The property was bid in by defendant. Plaintiff's mortgage was foreclosed in July, 1907.

1. Plaintiff seems to have assumed in his first letter that Lee would make settlements with the company and turn in cash, less his commission, and that the purchase of notes would be conducted with Lee personally. He was advised, however, that the notes were payable to the company, and to transact the business with it. Harbaugh admitted that the company accepted the arrangement made by Lee, accepted the money, and transferred the notes and the mortgage. It follows that defendant was bound by whatever representations were made by Lee to induce plaintiff to make the purchase. Defendant could not accept the benefit of his action in its behalf, and repudiate the means by which it was accomplished. Atherton v. Barber, 112 Minn. 523, 128 N. W. 827.

2. Lee's representation that August Graf owned one hundred sixty acres of fine land, worth $40 to $45 per acre, subject only to $1,400, was material and important, as bearing on his ability to pay. It was made with the intent to inspire confidence in plaintiff, for it was in answer to a request for information on that point. That Lee supposed he was stating the facts, or had no actual knowledge on the subject, does not excuse him or his principal from the result, if the plaintiff relied on his representation. The rule is stated in Humphrey v. Merriam, 32 Minn. 197, 20 N. W. 138. An unqualified affirmation amounts to an affirmation as of one's own knowledge. Bullitt v. Farrar, 42 Minn. 8, 43 N. W. 566, 6 L.R.A. 149, 18 Am. St. 485; Knappen v. Freeman, 47 Minn. 491, 50 N. W. 533. The evidence was sufficient to sustain a holding that August Graf did not own any land outside of his homestead when Lee wrote the letter, and the evidence is sufficient that plaintiff was given to understand that the mortgage assigned to him was a first lien.

3. That plaintiff relied on these representations is fully supported by the evidence. He may have made some additional inquiries; but the record does not justify the claim that he assumed

the responsibility of investigating Graf's responsibility and did not rely upon the representations of Lee and Harbaugh.

4. On the question of damages the court instructed the jury that the real inquiry was, not what the plaintiff realized from the sale, but what was the value of the notes December 19, 1905. "When you have determined this value as of December 19, 1905, you will subtract this sum from $1,282.50, and the remainder will be the damages to which the plaintiff is entitled." As bearing on the value of the notes as of December 19, 1905, the court stated that it was proper to consider all of the circumstances in the case, the solvency or insolvency of the makers, the value of the property, what was realized from its sale, and the efforts made by plaintiff to collect the notes. The value of the notes depended on the financial responsibility of the makers and the value of the security. The mortgage was foreclosed immediately after the second note came due in 1907, and no question was raised as to its validity and the good faith of plaintiff in making the sale. The amount due on the notes was reduced by the net amount realized by the sale. They were worthless in all other respects, and while the amount realized at the sale did not in itself furnish sufficient evidence of their value in December, 1905, it was a proper item to take into consideration. It will not be presumed that the jury estimated the value of the security as of December, 1905, alone by what was realized at the sale.

Affirmed.