[Civil No. 3189. Filed July 2, 1932.]

[12 Pac. (2d) 777.]

STANDARD INSURANCE AGENCY, INC., a Corporation, Appellant, v. NORTHEAST RAPID TRANSIT COMPANY, a Corporation, and C. M. MENDERSON, Appellees.

Messrs. Sloan, McKesson & Scott, for Appellant.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellees.

LOCKWOOD, J.—This is an action by Standard Insurance Agency, Inc., a corporation, hereinafter called plaintiff, against Northeast Rapid Transit Company, a corporation, hereinafter called the company, and C. M. Menderson, its president and general manager, to recover damages alleged to have been sustained by plaintiff as a result of the purchase from defendants of certain stock in the company, the allegation being that such purchase was induced by false representations of fact made by Menderson.

The case was tried to a jury which returned a verdict in favor of defendants, and from the judgment rendered on the verdict and the order overruling the motion for new trial this appeal has been taken.

There are some ten assignments of error, but we think it unnecessary to consider specifically more than assignment No. 6. This assignment is that the court erred in instructing the jury as follows:

"A person to whom a false or fraudulent representation is made has not the right for the purpose of predicating an action upon the statements of another to accept the statement of another and act upon it if he has the means of a reasonably prudent person and in the exercise of ordinary care to ascertain that such representations were false prior to the time that he acted upon them. A person, in other words, must exercise due care, such care as an ordinary prudent person would exercise, in ascertaining whether or not statements made to him to induce him to enter into any agreement are false or true, except in those cases where there has been developed a

relationship of trust, and that is not involved in this case."

In order that this instruction and its effect may be understood, it is necessary that we refer in a more or less general manner to 'the pleadings, the theory upon which the case was tried, the evidence, and the other instructions of the court.

The complaint is quite voluminous, and we quote only the parts necessary for a determination of this appeal. It alleges that defendant Menderson, as president of the company and acting on behalf of it, for the purpose of inducing plaintiff to subscribe to certain stock in the company made certain false and fraudulent representations as follows:

"That said Northeast Rapid Transit Company was a going concern; that it owned and held in its name a certificate of convenience and necessity which had been issued by the Arizona Corporation Commission, which authorized said company to conduct a passenger bus business as a common carrier over three (3) routes and between certain termini in a territory northeast of the city of Phoenix and ending at the Arizona canal near the Biltmore Hotel, all in the County of Maricopa, State of Arizona, and that by reason of the issuance to it of said certificate of convenience and necessity, the said company possessed a property right of great value which would enable it to make substantial profits upon its capital investment; that at said time, to-wit, on said 5th day of July, 1929, the said company had already purchased sufficient bus equipment to conduct said transportation business under said certificate of convenience and necessity; that Lynn Lockhart, Rio Grande Oil Company and Dean Stanley, known to plaintiff as persons and corporations of standing in the community and of pecuniary responsibility had become and were the owners of both common and preferred stock in said company, and that said purchasers and stockholders were well satisfied with their investment in the stock of said company and regarded the business of said company as a profitable one; that Joseph

Menderson and Jane Menderson had subscribed and paid for stock in said company to the amount of Twenty-five Hundred Dollars ($2,500) and that the company was adequately financed and did not need additional money or additional stockholders; that the sole reason the defendant company desired the plaintiff to become a stockholder therein was on account of the business connection it desired with plaintiff.''

It then alleges that such representations were false to the knowledge of defendants and made with intent to deceive plaintiff, and that plaintiff believed them and relied thereon, and as a result of such reliance purchased twenty-five shares of common and twenty-five shares of preferred stock of the company, paying therefor the sum of $2,000, and that such stock was and is worthless. The defendants admitted the sale of the stock, but denied making any false and fraudulent representations as alleged by plaintiff, and set up as an affirmative defense that the real reason for the purchase of the stock by plaintiff was not any representations made by Menderson, but the belief on the part of plaintiff that it thereby might secure certain insurance business from the company.

It was therefore the contention of plaintiff that defendants by false and fraudulent representations had induced it to purchase certain stock in the company, which was worthless, to its damage in the sum of $2,000, while it was the position of defendants: First, that no false or fraudulent representations of any nature were made; second, that the true reason for the purchase of the stock was the desire of plaintiff to secure certain insurance business from the company, and that it did not rely on any of the alleged statements of defendants even if they were made and were false; and, third, that admitting the statements set forth in the complaint were made by defendants and were false, that nevertheless plaintiff failed to exercise such care as an ordinarily prudent person

should have used in ascertaining if these statements were false or true, and therefore under no theory could defendants be liable for damages in the present case.

The undisputed facts in the case, as shown by the record, may be stated as follows: Defendant Menderson had at some time previous to the purchase by plaintiff of the stock in question secured from the Arizona corporation commission a certificate of necessity and convenience authorizing him to engage in the business of transporting passengers for hire over three routes extending from near the Biltmore Hotel, some miles northeast of Phoenix, to that city. This certificate was issued to Menderson personally and was always held by him as his personal property and not the property of the company. He had incorporated the Northeast Rapid Transit Company, his co-defendant herein, under the laws of the state of Arizona, and at all times after its incorporation he and his relatives had the complete control thereof. The company owned a certain number of passenger busses which it operated by virtue of the franchise owned by Menderson, and incident to such operation it found it necessary to take out a certain amount of liability insurance. Plaintiff desired to secure this business and after various negotiations purchased the stock referred to in its complaint from defendant company through Menderson; the par value being $2,500; $2,000 cash was paid therefor, plaintiff receiving a credit of $500 on the purchase price which was equivalent to the commission allowed by the Arizona Corporation Commission on the sale of such stock. For some reason, after the insurance had been carried by plaintiff for some time, Menderson placed it with another company, and thereafter this suit was brought.

There is a sharp conflict in regard to the remaining facts essential to an understanding of the case. If

the witnesses for plaintiff are to be believed, Menderson, as president of the defendant company, represented specifically to plaintiff through its manager, H. M. Bringhurst: (a) That the company was a going concern; (b) that it held in its own name a certificate of necessity and convenience for a passenger bus business between the Biltmore Hotel and the city of Phoenix; (c) that certain well-known and responsible citizens of Phoenix were the owners of both common and preferred stock of the company; (d) that said relatives of Menderson had paid in cash for their stock in the company; and (e) that it was adequately financed.

On the other hand, if the witnesses for defendants are to be believed, these representations were not made as alleged. Representation (b), if made, is admittedly false; there is a sharp dispute as to the truth or falsity of some of the other representations. Plaintiff offered evidence that it relied upon some at least of such representations in the purchase of the stock. Defendants' evidence is to the effect that plaintiff cared nothing for them, and was actuated solely by its desire to secure the insurance business of the defendant company. Admittedly if plaintiff had investigated the records of the Arizona Corporation Commission it would have discovered that the defendant company never owned a certificate of convenience and necessity for operating its bus line, as aforesaid, but that the certificate on which it was operating was owned as the personal property of the defendant Menderson, and that he could at any time terminate the right of the defendant company to use it.

The trial court in giving its general instructions stated the matters which plaintiff must prove in order to sustain a suit to recover damages for false and fraudulent representations, as follows:

"First, there must have been false representations made with the intent to deceive and defraud the plain-

tiff company; they must have been relied upon and must have been acted upon; they must have been made with the intent to deceive and defraud the plaintiff, or in utter disregard of their truth or falsity; they must have been acted upon; and there must have been a damage resulting from acting upon them; and the plaintiff must have had the right to rely upon them.''

This is, of course, a correct statement of the general essentials to an action of this nature, and the instructions of the court, as a whole, followed this rule. *Moore* v. *Meyers*, 31 Ariz. 347, 253 Pac. 626. It will be noted that one of the essentials set forth by the trial court was that the plaintiff must have had the right to rely upon the alleged false representations. Before the case finally went to the jury, one of the jurors asked the following question:

''Your Honor, will you explain a little more fully what is meant by the right of the plaintiff to depend upon the statements of the defendant?''

And in answer to such interrogatory the court gave the instruction which is assigned as error above.

There is no doubt in our minds that this instruction necessarily gave to the jurors the impression that under the circumstances of this case it was the duty of plaintiff to make a reasonable effort to ascertain whether the alleged false representations were false prior to the time that it acted upon them. In view of the evidence and the general instructions, we think that any juror would necessarily have understood the instruction complained of as meaning that it was the duty of plaintiff to inquire of the Arizona Corporation Commission whether or not defendant company did have a certificate of convenience and necessity to operate its bus line, and that it had no right to rely upon the alleged representations of Menderson that as a matter of fact defendant company did have such a certificate without further investigation. We think the instruction, under the evidence as it appears in

the record, might well have caused the jurors to return a different verdict from that which they would have returned had they been correctly informed as to the law on this point.

This court has had occasion to consider the duty of the officers of a corporation in regard to representations of fact made to a prospective buyer of corporate stock in the case of *Lentz* v. *Landers,* 21 Ariz. 117, 185 Pac. 821. There we say:

"It is true that the defendant had an opportunity to ascertain whether or not the company possessed a patent to the fan before he executed the note. He could have demanded that the patent be produced, *but the law will not deny him relief, although he may have been wanting in ordinary prudence in relying upon the representations of Weber concerning the patent.* True, that in the ordinary business transactions of life men are expected to exercise reasonable prudence, and not to rely upon others with whom they deal to care for and protect their interests, but this requirement is not to be carried so far that the law shall ignore or protect positive intentional fraud successfully practiced upon the simple-minded or unwary. 'As between the original parties, one who has intentionally deceived the other to his prejudice is not to be heard to say, in defense of the charge of fraud, that the innocent party ought not to have trusted him.' *Maxfield* v. *Schwartz,* 45 Minn. 150, 10 L. R. A. 606, 47 N. W. 448. It is argued that the defendant had full opportunity to examine the fan exhibited to him before he signed the note. This appears to be true, but the fraudulent representations related not to the fan itself, but to the patent, and concerned a material inducement to the contract. Furthermore, partial investigation, and a reliance in part upon representations, does not preclude relief on the ground of fraud. *Freeman* v. *F. P. Harbaugh Co.,* 114 Minn. 283, 130 N. W. 1110.

"As to the false representations of the value of the stock, it may be said that, as a general rule, statements as to the present or future value of corpora-

'tion stock are mere matters of opinion, and do not constitute actionable fraud, although they may be false. But there is a well-recognized exception to this general rule. Where the party making the false representations as to the value of the stock has, or assumes to have, special knowledge as to its value, and knows that the other party is ignorant of its value, and is relying upon his representations on the subject, the false representations will be regarded as the statement of an existing fact and not mere opinion. 6 Fletcher, Cyclopedia Corp., par. 3868; *Murray* v. *Tolman,* 162 Ill. 417, 44 N. E. 748; *Poole* v. *Camden,* 79 W. Va. 310, L. R. A. 1917E 988, 92 S. E. 454; *Ohlwine* v. *Pfaffman,* 52 Ind. App. 357, 100 N. E. 777." (Italics ours.)

This rule is supported by the following cases: *Redding* v. *Wright,* 49 Minn. 322, 51 N. W. 1056; *Southern Ins. Co.* v. *Milligan,* 154 Ky. 216, 157 S. W. 37; *American Alkali Co.* v. *Salom,* (C. C. A.) 131 Fed. 46; *Commercial Bank* v. *Buntain,* (Tex. Civ. App.) 278 S. W. 503; *Neher* v. *Hansen,* 12 Cal. App. 370, 107 Pac. 565.

Bringhurst, the manager for plaintiff, testified positively that Menderson, the president of the defendant company, told him that the company owned a certificate of convenience and necessity to operate its bus line, and that he would not have bought the stock had he not believed such to be the fact. The alleged representation was one of a specific fact. It was obviously a highly material one, for without such certificate the only assets of defendant company would be a number of second-hand busses, useless to anyone who did not have a passenger franchise. The question of the juror above quoted indicates that with him at least the question of whether Menderson owed a duty to tell the truth in regard to these matters was vital. We are of the opinion that upon the case as made it was prejudicial error to give the instruction which we have quoted. The trial court should have

instructed the jury, in substance, that Menderson owed a duty to plaintiff to make no false representations of fact in regard to the condition of defendant company as an inducement for it to purchase any stock, and that if he, as president of the corporation, did make false representations of fact in regard to the ownership of the certificate of convenience and necessity, plaintiff was under no obligation to investigate the truth or falsity of such statement, and that if the other essentials of the action also existed, it was entitled to recover.

We think, in view of what we have said, we need not consider the other assignments of error, as upon a new trial the court will doubtless see that the instructions given conform to the principles of law which we have laid down in this case.

The judgment of the superior court of Maricopa county is reversed and the case remanded, with instructions to grant a new trial.

McALISTER, C. J., and ROSS, J., concur.