IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 8, 2009 Session

**THERESA S. BIANCHERI, TRUSTEE OF THE MERCER FAMILY TRUST v. CHARLES M. JOHNSON, JR. ET AL.**

Appeal from the Chancery Court for Davidson County
No. 05-2068-I     Claudia Bonnyman, Chancellor

---

**No. M2008-00599-COA-R3-CV - Filed March 18, 2009**

---

**AND**

**CHARLES M. JOHNSON, JR. ET AL. v. IDA LOUISE CROMWELL ET AL.**

Appeal from the Chancery Court for Davidson County
No. 05-2068-I, 06-394-I   Claudia Bonnyman, Chancellor

---

**No. M2007-02861-COA-R3-CV - Filed March 18, 2009**

---

The matters at issue arise from a contract for the sale of a residence and the buyers' refusal to close on the purchase of the residence. The seller, the trustee of a family trust, and the buyers entered into a contract for sale of a residence. Prior to closing, the buyers discovered that elaborate audio-visual equipment, that was material to them, had been removed by the husband of the Trustee. The buyers considered this a material breach and refused to close; as a result, the seller filed suit against the buyers for breach of contract. The buyers counter-claimed alleging the seller breached the contract first and that the seller, through its real estate agent, had made fraudulent misrepresentations to induce the buyers to sign the contract, specifically that the audio-visual equipment was part of the sale and that the previous resident, who died inside the home after being shot by his wife in the bedroom closet, had not died in the home. The buyers also filed a separate action against the seller's real estate agent alleging fraudulent misrepresentation, fraud, promissory fraud, fraud in the inducement, negligent misrepresentation, and violations of the Tennessee Consumer Protection Act. The buyers' claims against the seller were summarily dismissed upon findings by the trial court that the contract was valid and that the buyers breached the contract by failing to close. The real estate agent was summarily dismissed upon a finding that the buyers could not establish actionable misrepresentations. The buyers then filed a motion for summary judgment on the issue of damages for breach of contract, contending the contract afforded the seller the option of electing liquidated damages, in lieu of compensatory damages, in the amount of the earnest money and that the seller had made that election by retaining the earnest money. The trial court summarily ruled that the seller

had elected to receive liquidated damages as its exclusive remedy. The buyers appeal the summary dismissal of their claims against the seller and the seller's real estate agent. The seller appeals the summary ruling that it elected to recover liquidated damages in lieu of compensatory damages. We have determined the real estate agent was not entitled to summary judgment as material facts are in dispute concerning whether the agent made material misrepresentations to induce the buyers to enter into the contract. We have determined the seller was not entitled to summary judgment on the issue of liability for the buyers' alleged breach of the contract because material facts are in dispute concerning whether the buyers are entitled to rescission of the contract based on the agent's alleged misrepresentations and whether the seller breached the contract prior to the buyers' alleged breach by removing components from the integrated television system, which the buyers contend was a material part of the contract. Due to our ruling that the seller was not entitled to summary judgment on the issue of liability, the seller is not entitled to damages for breach of contract, and it is premature to determine which party may be entitled to damages and in what amount. Accordingly, the award of liquidated damages in favor of the seller is reversed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Robert M. Burns and Timothy P. Harlan, Nashville, Tennessee, for Theresa S. Biancheri, Trustee of The Mercer Family Trust.

William D. Leader, Jr. and Taylor C. Sutherland, Nashville, Tennessee, for Charles M. Johnson, Jr. and Vikki H. Johnson.

Mary Byrd Ferrara and Teresa Reall Ricks, Nashville, Tennessee, for Ida Louise Cromwell and Shirley Zeitlin & Company.

**OPINION**

This opinion addresses the issues raised in two separate but related civil actions, each of which arise from the same set of facts. At issue are the parties' respective rights and responsibilities arising from a contract for the sale of a residence in Davidson County and discussions leading up to that contract. The residence for sale belonged to the late Joseph Mercer, a Nashville attorney, who died in the residence as a result of a gunshot wound.

Pursuant to his Last Will and Testament, the residence and Mr. Mercer's personal property were bequeathed to the Mercer Family Trust, the sole beneficiary of which is Mr. Mercer's minor son from a previous marriage. Theresa Biancheri, the mother of his son, is Trustee of the Mercer Family Trust. As Trustee, Ms. Biancheri listed the Mercer residence for sale with Ida Louise Cromwell, a real estate agent with the firm of Shirley Zeitlin & Company Realtors.

In June 2005, Charles and Vikki Johnson were in the market hoping to purchase a contemporary style residence. The Johnsons' real estate agent, Joy Flynn, informed them of the listing of the Mercer residence and the Johnsons visited the residence for the first time on June 4, 2005. Present at this initial visit were Charles Johnson, Vikki Johnson, Taylor Johnson, the Johnson's 27-year-old son, Joy Flynn, and Ms. Cromwell. Mr. Johnson, an architect, became intrigued by a fully integrated television system located in the downstairs living room. The Johnsons claim that while they were in the downstairs living room where the system was located that Ms. Cromwell made a gesture with her hand and stated "all this is included."[1]

During this first visit on June 4, the Johnsons noticed that all the furniture remained and that fresh food was in the refrigerator, yet all clothing and personal belongings had been removed. As a result, the Johnson became curious about the previous owners of the home, however, they did not question the agent during the first visit. Taylor Johnson, the buyers' son, later told his parents that Ms. Cromwell told him the previous owner died of natural causes and that her client had instructed her not to go into further detail.[2]

Following the first visit, Taylor Johnson and Joy Flynn made independent inquiries regarding Mr. Mercer's death, and both of them discovered articles on the internet indicating that he had been shot and killed in the residence. When the Johnsons were informed of this fact they lost interest in the home, as Mrs. Johnson did not want to purchase a residence where someone had died a violent death. After Ms. Cromwell learned that the Johnsons had lost interest, she reinitiated contact with them. The Johnsons state that Ms. Cromwell then informed them that based upon conversations she had with Mr. Mercer's neighbors, Mr. Mercer did not die in the residence but that he died in the ambulance, either while outside the residence or while being transported to the hospital.[3] Upon learning that Mr. Mercer did not die in the residence, the Johnsons' interest in the Mercer residence was renewed.

On June 30, 2005, the Johnsons and the Trustee entered into the contract for the sale of the Mercer residence for the purchase price of $1,025,000.[4] Paragraph 5 of the contract identified the items to be included in the sale:

> Unless excepted, this sale includes all fixtures, built-in appliances, permanent-type improvements, and all other articles of tangible property which are attached to the premises so that the removal thereof would leave the premises in an incomplete condition. Included are, and not by way of limitation and to the extent that same are

---

[1]Ms. Cromwell denies making this statement.

[2]Ms. Cromwell denies making this statement.

[3]Ms. Cromwell denies making this statement.

[4]On July 13, 2005, the Johnsons delivered a check of $20,000 as earnest money, which was deposited in a trust account managed by Shirley Zeitlin & Company Realtors.

-3-

now on or within the premises: wall-to-wall carpeting, full window treatments (including hardware), light fixtures, permanently attached mirrors, central vacuum and attachments, permanently installed fireplace screens, gas fireplace logs, interior and exterior hardware, window air conditioning units, attic and ceiling fans, permanently installed basketball goals, permanently installed outdoor cooking grills, fences, all landscaping, mailboxes, television antennas and rotors, awnings, automatic garage door opening equipment and remote controls, swimming pool equipment, and attached fire and security alarm systems.

Additional items to be included were written into the contract, wherein it was stated: "[a]ll TV's remain, all pool equipment and central vac equipment shall remain." Only one item was expressly and specifically excluded from the sale, the "portable TV in child's bedroom."

The closing was scheduled for July 29, 2005. In the interim, the Johnsons were making plans for substantial renovations to the residence. They repeatedly visited the home to ascertain changes they wanted, and to allow contractors to give their opinions pertaining to the renovation and provide estimates of the cost of the planned renovations and the time to complete the work. During these visits, Mr. Johnson and his son examined the integrated television system in order to assure it was properly functioning, which it was.

On July 28, 2005, the Johnsons visited the residence to perform a final walkthrough before the closing, which was scheduled for the following day. Upon visiting the house, Mr. Johnson noticed that substantial electronic components previously connected to the integrated television system in the downstairs living room had been removed, and that without these components the television monitor that remained did not work.[5] Ms. Flynn immediately contacted Ms. Cromwell to advise that the electronic components had been removed and that the Johnsons insisted the components be returned. What transpired thereafter is very much in dispute. The Johnsons insist that they requested the immediate return and reinstallation of the system, that Ms. Cromwell initially told Ms. Flynn that the items would be returned, but later Ms. Cromwell informed them that the Biancheris (the Trustee and her husband) had no intention of returning the equipment as it was of "sentimental value" to Mr. Mercer's son. The Johnsons state that Ms. Cromwell then offered to replace the equipment with lower quality equipment, however, the Johnsons refused this substitution claiming that the removal of the equipment was a breach of the contract; therefore, they would not close. The closing scheduled for July 29, 2005 did not occur.

On August 12, 2005, Ms. Biancheri, as Trustee on behalf of the Mercer Family Trust, filed suit against the Johnsons for breach of contract. On October 14, 2005, the Johnsons answered and filed a counter-claim against the Trustee. In an Amended Counter-Claim filed in March, the Johnsons alleged that the Trustee breached the contract and sought rescission of the contract based upon negligent misrepresentation. The Johnsons alleged that Ms. Cromwell, as an agent of the

---

[5]As Mr. Johnson explained it, the television that remained was merely a monitor that required the other components to function as a television.

Trustee, made material misrepresentations regarding the inclusion of the audio-visual equipment and where Mr. Mercer died. The Trustee filed an Answer to the Counter-Claim denying all claims and any liability to the Johnsons.

Thereafter, the Johnsons filed a separate action against Ms. Cromwell and Zeitlin Realtors, asserting claims for fraud, promissory fraud, fraud in the inducement, negligent misrepresentation, and violations of the Tennessee Consumer Protection Act, all of which arise out of the same set of facts as the suit with the Trust.[6] These claims were based upon the same misrepresentations which formed a basis for their claims against the Trust. Ms. Cromwell and Zeitlin Realtors filed an Answer denying the claims and any liability to the Johnsons.

Following discovery, the Trust filed a Motion for Summary Judgment on the issue of liability due to the Johnsons' breach of contract. The Johnsons opposed the motion contending the Trustee was in breach of contract and that the contract was fraudulently induced. The trial court granted the Trust's motion for summary judgment finding that a valid contract existed, that the Trustee's removal of the audio-visual components from the television system did not constitute a breach of the contract, and that the Johnsons breached the contract by failing to close. The trial court also found that the Johnsons' counter-claims asserted against the Trustee were rendered moot by the summary judgment order.

Ms. Cromwell and Zeitlin Realtors filed a Motion for Summary Judgment claiming that the Johnsons could not establish actionable misrepresentation. The Johnsons opposed the motion contending that misrepresentations by Ms. Cromwell fraudulently induced the Johnsons to enter into the contract. The trial court granted summary judgment in favor of Ms. Cromwell and Zeitlin Realtors finding that the audio-visual equipment at issue was not an "integrated" system but were separate components, and that the equipment was not included in the contract. The trial court also found that there were no exceptions in the contract, nor conditions in the contract, pertaining to the location of Mr. Mercer's death, and that the Johnsons were on notice concerning the circumstances of his death and failed to perform a reasonable investigation before entering into the contract. Ultimately, the court concluded that the Johnsons' failure to purchase the property was a breach that "was not caused by, or the result of negligent misrepresentation or fraudulent inducement by the defendants Cromwell or Zeitlin"; therefore, Cromwell and Zeitlin Realtors were entitled to judgment as a matter of law.

Following the entry of summary judgment in favor of the Trustee on the issue of liability in the breach of contract action, the Johnsons filed a motion for summary judgment stating that the Trustee had elected to receive the $20,000 in earnest money as liquidated damages as an exclusive

---

[6]The claims against Cromwell and Zeitlin were initially asserted in the first action but those claims were dismissed; whereupon, the Johnsons filed a separate action. Although the two actions remain separate, we elected to address all of the issues in this opinion.

remedy in lieu of compensatory damages.[7]  The trial court granted the Johnsons' motion for summary judgment on the issue of damages finding that the Trustee had elected to receive the earnest money as liquidated damages as her exclusive remedy.

The Johnsons and the Trustee filed separate appeals.  The Johnsons contend the trial court erred by summarily dismissing all of their claims against Cromwell and Zeitlin Realtors and that it erred by granting the Trustee summary judgment on the issue of the Johnsons' liability for breach of contract.  For her issue, the Trustee appeals the ruling that she elected to receive liquidated damages as her exclusive remedy.

## SUMMARY JUDGMENT STANDARD

Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003).  This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997).  We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

The standard for summary judgment in Tennessee was recently clarified by our Supreme Court in the cases of *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76 (Tenn. 2008), and *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008).  In *Martin*, the Court set out the summary judgment standard as follows:

> The moving party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *accord Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). Accordingly, a properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party fails to make this showing, then "the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails." *McCarley*, 960 S.W.2d at 588; *accord Staples*, 15 S.W.3d at 88.

---

[7]Paragraph 16 of the real estate contract stated "[i]f Buyer breaches the contract, all damages resulting therefrom to Seller and to Listing Broker, including reasonable attorney's fees, costs, and the commissions hereinafter specified, shall be paid by Buyer.  Seller, however, may elect to retain the earnest money as liquidated damages..."

The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *see also McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.5. Both methods require something more than an assertion that the nonmoving party has no evidence. *Byrd*, 847 S.W.2d at 215. Similarly, the presentation of evidence that raises doubts about the nonmoving party's ability to prove his or her claim is also insufficient. *McCarley*, 960 S.W.2d at 588. The moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 5. We have held that to negate an essential element of the claim, the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party. *See Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004). If the moving party is unable to make the required showing, then its motion for summary judgment will fail. *Byrd*, 847 S.W.2d at 215.

If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215. The nonmoving party may satisfy its burden of production by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*McCarley*, 960 S.W.2d at 588; *accord Byrd*, 847 S.W.2d at 215 n.6. The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party. *McCarley*, 960 S.W.2d at 588. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A disputed fact presents a genuine issue if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

*Martin*, 271 S.W.3d at 83-84.

ANALYSIS

CLAIMS AGAINST CROMWELL AND ZEITLIN REALTORS

We first address the trial court's grant of summary judgment to Ms. Cromwell and Zeitlin Realtors. The trial court summarily dismissed the claims of fraud, promissory fraud, fraud in the inducement, negligent misrepresentation, and violations of the Tennessee Consumer Protection Act. The Johnsons' claims were based on two alleged misrepresentations by Ms. Cromwell, which the Johnsons contend were made to induce them to sign the contract to purchase the Mercer residence.

The first misrepresentation allegedly occurred after Ms. Cromwell learned that the Johnsons had decided not to purchase the Mercer residence because they understood that Joseph Mercer had died in the home. According to the Johnsons, once Ms. Cromwell learned of this, she informed them that Joseph Mercer did not die inside the residence but that he died in the ambulance. Ms. Johnson insists this was very important to her because she would not have agreed to purchase the residence if he had died inside the home. The other alleged misrepresentation pertained to the integrated television system. The Johnsons testified that Ms. Cromwell represented that the entire integrated television system was part of the sale. Mr. Johnson testified that this was important to him, as he was enamored with the integrated system. The Johnsons state that they relied upon these representations, which were made fraudulently or negligently, when entering into the contract to purchase the residence.

In their motion for summary judgment, Ms. Cromwell and Zeitlin Realtors asserted that the Johnsons could not establish actionable misrepresentation, that there were no genuine issues of material fact, and, therefore, they were entitled to summary judgment as a matter of law. The trial court agreed and summarily dismissed all claims against Ms. Cromwell and Zeitlin Realtors.

As the moving parties on the summary judgment motion, Ms. Cromwell and Zeitlin Realtors had the burden to either negate an essential element of the Johnsons' claim or establish that the Johnsons could not prove an essential element of their claim at trial. *Martin*, 271 S.W.3d. at 83 (citing *Hannan*, 270 S.W.3d at 5; *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.5). Therefore, Ms. Cromwell and Zeitlin Realtors were required to shift the burden of production to the Johnsons by either affirmatively negating an essential element of each claim or showing the Johnsons cannot prove an essential element at trial. *Id*. (citing *Hannan*, 270 S.W.3d at 9; *McCarley*, 960 S.W.2d at 588). We have determined they failed to do either.

FRAUDULENT AND NEGLIGENT MISREPRESENTATION

To sustain a cause of action for fraudulent misrepresentation, the plaintiff must show that: 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact, and 6) plaintiff suffered damages as a result of the

misrepresentation. *Devorak v. Patterson*, 907 S.W.2d 815, 819 (Tenn. Ct. App. 1995) (quoting *Metro. Gov't of Nashville, Davidson Co. v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992)).

To sustain a cause of action for negligent misrepresentation, the plaintiff must establish by a preponderance of the evidence that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information; and the plaintiff justifiably relied on the information. *Strange v. Peterson*, No. W1999-00489-COA-R3-CV, 2001 WL 29461, at *2 (Tenn. Ct. App. Jan. 11, 2001) (citing *Merriman v. Smith*, 599 S.W.2d 548, 556-57 (Tenn. Ct. App. 1979)). Negligent misrepresentation occurs when a defendant, acting in the course of her business, profession, or employment, or in a transaction in which she has pecuniary interest, supplies faulty information meant to guide another in their business transactions; the defendant fails to exercise reasonable care in obtaining or communicating information; and the plaintiff justifiably relies upon the information provided by the defendant. *Id*. (citing *Robinson v. Omer*, 952 S.W.2d 423 (Tenn. 1997) (citing Restatement (Second) of Torts § 552)).

Ms. Cromwell and Zeitlin Realtors contend the Johnsons could not establish justifiable reliance, which is an essential element for both negligent misrepresentation and fraudulent misrepresentation.[8] Although Ms. Cromwell denies making the alleged representations, and the defendants insist there are no disputed material facts regarding where Joseph Mercer died or the inclusion of all or some of the integrated television system in the sale, assuming arguendo there is a dispute of a material fact, the defendants contend the undisputed facts demonstrate that the Johnsons did not reasonably rely on the alleged misrepresentations and the Johnsons were not damaged by the alleged misrepresentations.

Whether a plaintiff's reliance on an alleged misrepresentation is reasonable is generally a question of fact, and thus, is generally not appropriate for summary judgment. *City State Bank v. Dean Witter Reynolds*, 948 S.W.2d 729, 737-38 (Tenn. Ct. App. 1996) (citing *Nichols v. A. B. Colemans, Inc.*, 652 S.W.2d 907 (Tenn. App. 1983); *Marine Midland Bank, N.A. v. G.M.A.C.*, No. 03 A01-9502-CV-00060, 1995 WL 417047 (Tenn. App. July 17, 1995)). Nevertheless, the reasonableness of the Johnsons' reliance on Ms. Cromwell's representations must amount to a genuine issue. *See Annaco, Inc. v. Corbin*, No. 02A01-9804-CH-00111, 1998 WL 929637, at *4 (Tenn. Ct. App. Dec. 31, 1998) (citing *Byrd*, 847 S.W.2d at 215) ("[A]s with other questions of fact, the reasonableness of reliance must amount to a genuine issue in order to defeat summary judgment."). Disputed material facts do not create a genuine issue unless a reasonable jury could legitimately resolve that fact in favor of either party. *Id*. (citing *Byrd*, 847 S.W.2d at 215).

Factors relevant to a determination of the reasonableness of a plaintiff's reliance on a misrepresentation include the following: (1) the plaintiff's business expertise and sophistication; (2) the existence of longstanding business or personal relationships between the parties; (3) the

---

[8] The Johnsons' claims for fraud, fraud in the inducement, promissory fraud, as well as their claim under the Tennessee Consumer Protection Act are dependent upon an intentional misstatement, or unfair or deceptive acts.

availability of the relevant information; (4) the existence of a fiduciary relationship; (5) the concealment of the fraud; and (6) the opportunity to discover the fraud. *Id.* (citing *City State Bank*, 948 S.W.2d at 737). "Generally, a party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within its reach." *Id.* (citing *Solomon v. First American Nat'l Bank*, 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989)).

Mr. Johnson stated that they relied upon Ms. Cromwell's representations, which relieved them of their concerns regarding where Mr. Mercer died. Mr. Johnson also stated that they had more faith in Ms. Cromwell's representations regarding the location of Mr. Mercer's death than newspaper reports. Ms. Cromwell denies making such statements and argues that the Johnsons were unreasonable in their reliance, insisting they had the duty to do additional research to ascertain where Mr. Mercer died. The record reveals that Mr. Johnson contacted a friend, who was an attorney, in an attempt to discover additional information regarding Mercer's death, but his inquiries were fruitless. The record also reveals that as the negotiations for the purchase of the residence ensued, the police investigation of Mr. Mercer's death was on-going; therefore, the police would not provide information concerning their investigation. This fact is corroborated by the Trustee, Ms. Biancheri, who stated in her deposition that the police did not provide her with any information regarding the shooting. Accordingly, the Johnsons did not have any other readily available means of obtaining information regarding Mr. Mercer's death.

As this court stated in *Hamilton v. Galbraith* in 1932:

"If a buyer undertakes to investigate and determine the entire matter for himself, and is afforded a full and fair opportunity therefor, and in fact does make such investigation, and is permitted to make it as full and complete as he chooses, and he accepts the property after such investigation, the authorities are practically unanimous that he cannot be heard thereafter to assert that he relied upon the representations of the adverse party," but "if the buyer, instead of investigating as fully as he might, made only a partial investigation, and relied in part upon such investigation and in part upon the representations of the adverse party, and was deceived by such representations to his injury, he may maintain an action for such deceit."

*Hamilton v. Galbraith*, 15 Tenn. App. 158, 174 (Tenn. Ct. App. 1932) (quoting *Meland v. Youngberg*, 124 Minn. 446, 145 N.W. 167, Anno. Cas., 1915-B, 775, 779).

As for the integrated television system, Ms. Cromwell contends the equipment was not to be included in the sale, that she did not make the statements alleged by the Johnsons, and that there is nothing in the record to indicate the Johnsons reasonably relied upon the alleged statements. The Johnsons dispute these facts, stating that Ms. Cromwell stated unequivocally that "all this is included," referencing the audio-visual components, which were needed for the integrated television system to function. The real estate contract the parties signed expressly stated "[a]ll T.V.s to remain," with the only exclusion being "the television within the child's bedroom." Mr. Johnson testified that the integrated television system was a significant reason for his interest in the home and

that he relied upon Ms. Cromwell's statement, which he asserts is corroborated by the above language in the contract. For these reasons, the Johnsons insist their reliance on Ms. Cromwell's statement concerning the integrated television system was reasonable.

Based upon the foregoing facts and legal principles, we have determined that a factual question amounting to a genuine issue exists concerning whether Ms. Cromwell made the representations at issue and whether the Johnsons' reliance on the alleged misrepresentations was justifiable or reasonable. *See Annaco*,1998 WL 929637, at *4 (citing *Byrd*, 847 S.W.2d at 215). Therefore, Ms. Cromwell and Zeitlin Realtors failed to either affirmatively negate an essential element of the Johnsons' claim or demonstrate that the Johnsons could not prove at trial an essential element of their claim for fraudulent misrepresentation or negligent misrepresentation.[9]

As for the issue of damages, Ms. Cromwell also contended that the Johnsons did not incur damages as a consequence of the alleged misrepresentations. We have determined that a finder of fact could conclude that the Johnsons were damaged as a result of being induced to enter into a contract to purchase a residence that Ms. Johnson insists she cannot live in if Mr. Mercer died in the residence instead of the ambulance. Further, we have determined that a finder of fact could conclude that the Johnsons were damaged as a result of being induced to enter into the contract with the reasonable belief the sophisticated and apparently expensive integrated television system was part of the sale.

We, therefore, reverse the summary dismissal of the Johnsons' claims of fraudulent misrepresentation and negligent misrepresentation.

### THE JOHNSONS' OTHER CLAIMS AGAINST CROMWELL AND ZEITLIN REALTORS

The trial court also summarily dismissed the Johnsons' claims for fraud, fraud in the inducement, promissory fraud, and their claim under the Tennessee Consumer Protection Act, which are dependent upon an intentional misstatement or unfair or deceptive acts. The claims for fraud, fraud in the inducement, promissory fraud, as well as the claim under the Tennessee Consumer Protection Act are partly dependent upon the disputed fact concerning whether Cromwell made an intentional misrepresentation, or otherwise engaged in unfair or deceptive acts. We have determined that a finder of fact could conclude that Ms. Cromwell made misrepresentations concerning where Joseph Mercer died and whether all of the integrated television system was included in the sale.

---

[9]We also reject the assertion by the defendants Cromwell and Zeitlin Realtors that the Parol Evidence Rule bars introduction of Ms. Cromwell's alleged statements. "Parol evidence is generally inadmissable to contradict, vary, or alter the terms of a written contract where the written instrument is valid, complete, and unambiguous." *Butler v. Butler*, No. W2007-01257-COA-R3-CV, 2008 WL 5396019, at *6 (Tenn. Ct. App. Dec. 23, 2008) (citing *Airline Constr., Inc. v. Barr*, 807 S.W.2d 247, 259 (Tenn. Ct. App. 1990)). Tennessee law has long recognized several exceptions to the parol evidence rule including allegations of fraud, *Id.* (citing *Hines v. Wilcox*, 33 S.W. 914, 915 (Tenn. 1896)), and the rule *does not apply* to claims of fraudulent misrepresentation in inducement of a contract. *Id.* (citing *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 588 (Tenn. Ct. App. 1980); *Lipford v. First Family Fin. Servs., Inc.*, No. W2003-01208-COA-R3-CV, 2004 WL 948645, at *4 (Tenn. Ct. App. Apr. 29, 2004)) (emphasis added).

Therefore, Ms. Cromwell and Zeitlin Realtors are not entitled to summary judgment on claims dependent upon this disputed fact.

THE TRUSTEE'S BREACH OF CONTRACT ACTION AGAINST THE JOHNSONS

We will now address whether the trial court erred in granting summary judgment in favor of the Trustee on the issue of liability upon the finding the Johnsons breached the contract by refusing to close on the sale.

The Trustee, as the moving party, bears the burden of proof at trial; therefore, the Trustee was required to demonstrate she was entitled to summary judgment as a matter of law. As our Supreme Court explained in *Hannan*:

> [A] plaintiff who files a motion for partial summary judgment on an element of his or her claim shifts the burden by alleging undisputed facts that show the existence of that element and entitle the plaintiff to summary judgment as a matter of law. Similarly, a defendant asserting an affirmative defense, such as laches, shifts the burden of production by alleging undisputed facts that show the existence of the affirmative defense.

270 S.W.3d at 9 n.6. A claim for breach of contract requires "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007) (citing *ARC LifeMed, Inc., v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)).

The undisputed facts in the record demonstrate that the Johnsons and the Trustee entered into a contract, that the closing was to occur on July 29, 2005, and that the Johnsons refused to appear at the closing as required by the real estate contract. With these facts established, the Trustee carried her burden of demonstrating the elements required to support her breach of contract claim. As a consequence, the burden of production then shifted to the Johnsons to demonstrate a genuine dispute as to a material fact which would render summary judgment inappropriate. *See Martin*, 271 S.W.3d at 84 (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215).

The Johnsons contend they are not liable for breach of contract on two grounds. First, they contend the Trustee's agent, Ms. Cromwell, induced them to enter into the contract by making fraudulent or negligent misrepresentations. If the Johnsons have created a dispute of fact regarding either alleged misrepresentation, the Trustee is not entitled to summary judgment on her breach of contract claim.

If the Johnsons can establish that the Trustee or her agent made a material misrepresentation that induced the Johnsons to enter into the contract, that fact "precludes a finding of mutual assent" and as a result, the contract is voidable by the Johnsons. *See Scruggs*, No. 03A01-9209-CH-00358,

-12-

1993 WL 93362, at *4 (Tenn. Ct. App. March 31, 1993). In order for a contract to be rescinded due to misrepresentation, it must be established that "(1) there is an assertion that is not in accord with facts, (2) the assertion must be either fraudulent or material, (3) the assertion must be relied upon by the recipient in manifesting assent, and (4) the reliance of the recipient must be justified." *Scruggs*, 1993 WL 93362, at *4 (citing Restatement (Second) of Contracts § 159 introductory note, p. 425 and § 164 (1981); E. Allan Farnsworth, Contracts, § 4.10 (1990)). As we noted earlier, determining whether the plaintiffs' reliance on alleged misstatements is reasonable is generally a question of fact and, therefore, is inappropriate for summary judgment. *City State Bank*, 948 S.W.2d at 737-38 (citing *Nichols*, 652 S.W.2d 907; *Marine Midland Bank*,1995 WL 417047 (Tenn. App. July 17, 1995)).

The Johnsons assert that misrepresentations by Ms. Cromwell, the Trustee's agent, warrant rescission of the contract. As we discussed earlier, there is a genuine issue as to whether Ms. Cromwell made a fraudulent or negligent misrepresentation concerning where Mr. Mercer died and whether all of the integrated television system was included in the contract. Depending upon whether there was a misrepresentation and whether a misrepresentation was material to the Johnsons when entering into the contract, either alleged misrepresentation may be grounds for rescission of the contract.

Alternatively, the Johnsons contend the Trustee breached the contract prior to their refusal to close by removing substantial and material components of the integrated television system, thereby relieving them of a duty to close. If the entire integrated television system was to be part of the contract, and the Trustee's husband wrongfully removed material components of the system in breach of the contract, the Trustee would have breached the contract first, for which the Johnsons would be excused of the duty to close unless and until the breach is cured.[10] A plaintiff who has materially breached a contract is not entitled to damages stemming from the defendant's later material breach of the same contract. *United Brake Sys., Inc.v. American Envtl. Protection*, 963 S.W.2d 749, 756 (Tenn. Ct. App. 1997) (quoting *McClain v. Kimbrough Const. Co.*, 806 S.W.2d 194, 199 (Tenn. App. 1990); *Santa Barbara Capital Corp. v. World Christian Radio Found., Inc.*, 491 S.W.2d 852, 857 (Tenn. App. 1972)) (holding there can be no recovery for damages in a breach

_____

[10]Tennessee courts look to the Restatement (Second) of Contracts, § 241 to determine whether a breach of contract is material such that the non-breaching party could avoid performance:

> (1) The extent to which the injured party will be deprived of the expected benefit of his contract;
> (2) The extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> (3) The extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> (4) The likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and
> (5) The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Adams TV, Inc. v. ComCorp of Tenn.*, 969 S.W.2d 917, 921 (Tenn. Ct. App. 1997) (citing *McClain v. Kimbrough Constr. Co., Inc.*, 806 S.W.2d 194, 199 (Tenn. App. 1990); Restatement (Second) of Contracts, § 241 (1981)).

of contract action by the party who himself breached the contract). Although the Trustee insists she did not breach the contract by removing components from the integrated television system, the Trustee also contends she made a reasonable offer to cure the alleged breach. We note, however, that the Johnsons vigorously dispute the assertion that the Trustee offered to cure the breach; therefore there are disputed facts concerning whether the Trustee made a reasonable offer to cure the alleged breach.[11]

Although the Trustee carried her burden of demonstrating the elements required to support her breach of contract claim, thereby shifting the burden of production to the Johnsons to demonstrate a genuine dispute as to a material fact which would render summary judgment inappropriate, the Johnsons succeeded in carrying their burden of production in response to the motion for summary judgment. Therefore, the Trustee is not entitled to summary judgment as to the issue of liability for breach of contract.

### DAMAGES FOR BREACH OF CONTRACT

Because we have determined the Trustee is not entitled to summary judgment on the issue of liability for breach of contract, the Trustee is not entitled to damages for breach of contract and it is premature to determine which party may be entitled to damages and in what amount. Accordingly, the award of liquidated damages in favor of the Trustee is reversed.

### IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion. One-half of the costs of appeal are assessed against the Mercer Family Trust, and one-half of the costs are assessed against Ida Louise Cromwell and Shirley Zeitlin & Company Realtors.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[11]There are genuine issues of material fact concerning whether the Trustee breached the contract first by removing the components of the integrated television system, whether this was a material breach, and whether the Johnsons were unreasonable in their refusal to close due to an offer allegedly made to "replace" the equipment. We note, however, that Mr. Johnson stated in his deposition that the offer to "replace" the equipment was tentative at best, and that Ms. Cromwell's only effort to cure was to look through the phone book and place calls to stereo stores. The reasonableness of an offer to cure is but one factor to consider in determining whether the breach was material. *See* Restatement (Second) of Contracts, § 241(4).